Hillsborough, }
Dec. 5, 1944. } No. 3496.

.MARY ROWLAND *v.* ST. MARY'S BANK.

*McLane, Davis & Carleton, Arthur A. Greene, Jr., J. Vincent Broderick* and *Robert P. Bingham* (*Mr. Bingham* orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Wyman* orally), for the defendant.

BRANCH, J.   The defendant's position is thus summarized in its brief. "In the absence of any agreement to repair or retention of control by the landlord, a member of tenant's family may not recover

of the landlord for injuries due to defect in the demised premises. *Flanders* v. *Bank,* 90 N. H. 285.''

Accepting this as a correct statement of the law, it is plain that the decisive inquiry in this case must be whether there was any evidence of a retention of control over the roof by the landlord. The case has been argued on this assumption by both parties.

It thus appears that the case of *Culver* v. *Kingsley,* 78 Ill. App. 540, cited by the defendant, is not an authority in its favor. There the Court said in its opinion: ''The only theory upon which the recovery here could be sustained, would be that the roof in question was a 'public portion of the building' and that control of said portion was retained by the landlord, who was thus obligated to keep it in repair for the common use of tenants of the building.'' *Ib.* 542. This is a wholly different question from that posed by the defendant in the present instance and indicates that the law of Illinois relating to the liability of landlords to their tenants differs from that which prevails in this jurisdiction.

In order to show that the defendant retained control of the roof, the plaintiff called as her first witness, Mr. Raoul Hebert, treasurer and general manager of the defendant bank, who testified that the bank took over the premises by foreclosure in 1938; that thereafter he made an inspection and found that the shed roof was in very poor condition. He further testified as follows: ''I recall that Mr. Tondreau, our agent, mentioned that that was unsafe and that no one should hang clothes from the roof. Therefore I told him to forbid them to go on the roof, and I think he said he had already told them. . . . What discussion did you have with Mr. Tondreau about tearing down the roof? A. As I recall it in discussing it I mentioned that we should tear it down, that it was unsightly and was serving no purpose because we thought at the time that no one was using it. This was later, after they were supposed to have been notified not to use it.''

We think that the foregoing testimony required that the issue of control be submitted to the jury. The admitted fact that defendant's treasurer told the agent in charge of the property to forbid the use of the roof by the tenant, was an unequivocal manifestation of control over it, and the subsequent declaration of the treasurer that the defendant intended to tear it down, was further evidence of defendant's claimed right of control over this portion of the premises.

The defendant contended that the plaintiff could not claim the benefit of Mr. Hebert's testimony as an admission of control with-

out admitting the truth of his statement, "I think he [Tondreau] said he had already told them." This contention cannot be adopted. Mr. Hebert's testimony contained a clear admission of an attempted exercise of control by the defendant. Whether Tondreau made the statement attributed to him, and whether he, in fact, transmitted to the plaintiff or her daughter the defendant's prohibition of future use of the roof as a clothesyard, were, on the evidence, questions of fact for the jury.

The defendant, at the argument in this court, contended that the testimony of the plaintiff and her daughter, Mrs. Leggett, "is all so contradictory as to demonstrate beyond question that they are not credible witnesses." In support of this argument, the defendant relied principally upon certain photographs of the roof taken within a week after the accident by Mrs. Leggett and her testimony regarding them. Specifically it is claimed, (1) that an examination of the photographs indicates that they could not have been taken from the positions described by the witness, and (2) that they demonstrate that the holes in the roof shown therein must have existed prior to the accident.

It is true that Mrs. Leggett gave conflicting testimony as to the places from which the different pictures were taken. She denied that she went upon the roof to take them, and it is difficult to see how some of the pictures could be taken from any other position. The question, however, was a purely incidental one and the defendant made no contention at the trial that the photographs did not correctly represent the situation. The uncertainty as to the point from which they were taken would not justify a finding that Mrs. Leggett was not a credible witness. It may well be stated at this point that this court recognizes the truth of Professor Wigmore's statement that the maxim: *falsus in uno, falsus in omnibus*, "is in itself worthless." Wig. Ev. (3d *ed.*) *s.* 1008. See *Hall* v. *Insurance Co.*, 91 N. H. 6.

The examination of the photographs wholly fails to sustain defendant's position that they demonstrate the existence of holes in the roof before the accident occurred. This contention of the defendant is, therefore, overruled.

*New trial.*

All concurred.