UNITED STATES of America, Appellee,

v.

Leslie BLAIR, Craig Brown, Althea Fuller, Alvira Powell, Lenford Titus, Defendants,

Craig BROWN, Defendant–Appellant.

No. 355, Docket 91–1245.

United States Court of Appeals, Second Circuit.

Argued Oct. 31, 1991.

Decided Feb. 28, 1992.

Anthony M. Bruce, Asst. U.S. Atty., Buffalo, N.Y. (Dennis C. Vacco, U.S. Atty. W.D. New York, of counsel), for plaintiff-appellee.

Fred S. Gallina, Rochester, N.Y., for defendant-appellant.

Before OAKES, Chief Judge, LUMBARD and ALTIMARI, Circuit Judges.

LUMBARD, Circuit Judge:

Craig Brown appeals from his conviction, entered in the Western District of New York, on January 14, 1991, for conspiring to distribute cocaine and to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846, and for distributing cocaine within 1,000 feet of a public school, in violation of 21 U.S.C. §§ 841(a)(1) and 845(a). Judge Larimer sentenced him to 52

months for each count, to run concurrently. Brown argues that the district court erred in refusing to order a mistrial following disclosure that the government's key witness perjured himself. He also argues that the district judge abused his discretion in sentencing. We affirm the judgment.

On August 4, 1988, Craig Brown, Leslie Blair, Althea Fuller, Alvira Powell and Lenford Titus were indicted for conspiring to distribute and to possess with intent to distribute cocaine from May 1987 through July 31, 1988; Brown was also indicted for distributing cocaine within 1,000 feet of a public school.[1]

At Brown's trial, the government relied heavily on the testimony of Blair, who described a complex drug conspiracy which operated in Rochester from March 1986 through July 1988. Blair testified as follows:

In March 1986, Blair ran into Titus in a Rochester restaurant. Titus was accompanied by several other people, including Brown, and they began discussing the possibility of operating a drug network in the Rochester area. Blair, Titus, Brown, and other members of the group met six more times during March 1986 to plan their operation. During these meetings the conspirators discussed the use of apartments, known as "gatehouses", from which they would distribute drugs. They also planned special security systems for the apartments and devised methods of transporting cocaine from New York City and Florida to Rochester.

The conspirators operated four gatehouses from March 1986 through July 1988; Brown was responsible for two of them. Blair heard Brown call Titus by beeper, and often witnessed Titus return Brown's calls, sometimes two or three times a day. He saw Brown at the gatehouses, witnessed Titus deliver cocaine to Brown, and observed Brown bag the drugs. Furthermore, Blair often took orders for cocaine from Brown.

In addition to Blair's testimony, the government introduced audiotapes of conversations between Titus and Brown regarding the sale of drugs. Police Investigator Robert Urtis, an undercover agent, testified that he purchased cocaine from Brown within 1,000 feet of a public school.

During cross-examination of Urtis, the defense sought to establish that Blair had perjured himself. At sidebar, the defense revealed that Brown had been incarcerated from March through July 1986, and therefore could not have participated in some of the activities described by Blair.

Based on this disclosure, Brown moved for a mistrial. He argued that the prejudicial effect of Blair's perjured testimony and the indications of prosecutorial misconduct mandated such action. When questioned by Judge Larimer as to whether he was aware that Brown could not have participated in the conspiracy from March through July 1986, the prosecutor admitted seeing Brown's prison record, and said "I didn't look at his rap sheet to attempt to determine when he was on the street." Judge Larimer denied Brown's motion for a mistrial, deciding instead to "let the proof take its course."

At the conclusion of the government's case, the defense introduced a stipulation that Brown could not have participated in the conspiracy from March through July 1986 as Blair had testified because he was incarcerated from July 1984 until July 1986 for a conviction later overturned on appeal. Brown presented no other evidence in his defense.

Following closing arguments, Judge Larimer gave the jury a special instruction regarding Blair's testimony: "If you believe that any witness has been so impeached, contradicted, then it is within your exclusive province to give the testimony of that witness such credibility or weight, if any, that you think it deserves ... You can accept all of the testimony that the witness has given. You can accept some of it and not the rest of it. Or you can reject it all."

After the jury returned a guilty verdict, the court granted Brown twenty days in

---

1. Blair and Fuller pleaded guilty and cooperated with the government, and Titus pled guilty to one count of conspiracy. Powell was tried before a jury and found guilty of conspiracy.

which to move for a mistrial. Brown made no post-trial motions.

Before sentencing, Judge Larimer rejected the presentence report estimate that Brown sold 183.5 grams of cocaine, and made an independent determination that Brown could have foreseen that the conspiracy would distribute at least twice that amount. He therefore increased Brown's offense level by two points under the federal sentencing guidelines. Judge Larimer also rejected the report's finding that Brown accepted responsibility for his crimes and was thereby entitled to a two point decrease in offense level. On April 16, 1991, he sentenced Brown to 52 months on each count, to run concurrently.

On appeal, Brown seeks dismissal of the indictment or a new trial. Alternatively, he argues that the district court erred in its determination of the applicable levels under the federal sentencing guidelines. Because the perjured testimony was discovered at trial and an appropriate jury instruction was given, we find that the perjured testimony did not deprive the defendant of a fair trial. We find no error in the sentence imposed by Judge Larimer, and affirm the judgment.

## DISCUSSION

■ We have always assumed, though never expressly held, that perjured testimony must have remained undisclosed during trial in order to require reversal of a conviction. *Cf. United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976) (finding violation of due process when "*undisclosed* evidence demonstrates that the prosecution's case includes perjured testimony") (emphasis added); *United States v. Gaggi,* 811 F.2d 47, 59 (2d Cir.) ("A new trial is required if the government uses perjured testimony *that is uncorrected* and reasonably likely to have affected the outcome") (emphasis added), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987). This position is consistent with our long-held view that when perjury is introduced at trial, the subsequent conviction is to be reversed only if there is reason to believe that the verdict was based on the false testimony. *See, e.g., Sanders v. Sullivan,* 863 F.2d 218, 226 (2d Cir.1988); *United States v. Stofsky,* 527 F.2d 237, 245–46 (2d Cir.1975), *cert. denied, Hoff v. United States,* 429 U.S. 819, 97 S.Ct. 65, 50 L.Ed.2d 80 (1976). Once the perjury is disclosed during trial, however, there is less likelihood that the verdict was tainted by the false evidence. We therefore find that there was no reversible error in this case, where Blair's perjured testimony was discovered and fully corrected during trial.

■ Blair's perjury was disclosed to the jury during trial, and the defense had ample opportunity to rebut the testimony and undermine his credibility. The judge gave the jury adequate instructions regarding its consideration of the perjured testimony. Even without Blair's testimony, there was sufficient evidence to sustain the jury's verdict. We therefore conclude that the introduction of the perjured testimony did not deprive Brown of a fair trial.

■ In the district court, Brown complained that in order to correct Blair's perjury, it was necessary to disclose that he was imprisoned, and he was improperly prejudiced. We disagree. The record already contained testimony that Brown and other members of the conspiracy had been arrested in a number of drug busts and had to be bailed out of jail. Furthermore, the jury was told that the conviction underlying Brown's incarceration was reversed on appeal. The prejudice, if any, from the disclosure of Brown's imprisonment did not deprive him of a fair trial.

■ Although there is no reason to believe that the government offered Blair's testimony regarding Brown's activities knowing that it was untruthful, it is obvious that the preparation of the government's case was grossly negligent. Familiarity with the police record of government witnesses is elementary to the government's preparation for trial. With Brown's police record in the government's possession, counsel should have been familiar with its contents and should have been careful to prevent the giving of untruthful

**30**

testimony. The government's negligence, however, in no way detracts from the fact that when the jury deliberated, it was fully informed of the false testimony and was instructed in its consideration of that testimony.

In his presentence interview, Brown admitted to selling 183.5 grams of cocaine, a level 20 offense under the Federal Sentencing Guidelines. He argues that the district court erred in determining that he reasonably could have foreseen that the conspiracy would distribute over twice that amount, elevating his crime to a level 22 offense for purposes of sentencing. We disagree.

█ Federal Sentencing Guidelines commentary 1B1.3 states that a defendant who participates in a conspiracy is accountable for "conduct of others in furtherance of the execution of the jointly undertaken criminal activity that was reasonably foreseeable by the defendant." Judge Larimer found that during 1987 and in July 1988 Brown had been part of a conspiracy that distributed substantial amounts of drugs, and that he was either involved in the distribution of those drugs or knew that his co-conspirators were distributing them. The district court acted in accordance with the guidelines in treating Brown's crimes at the higher offense level.

█ Finally, Brown challenges the district court's refusal to grant him a two-point reduction for acceptance of responsibility. We are not persuaded. Judge Larimer stated that "I just have difficulty in this case allowing a two point reduction when the so-called acceptance comes ... a week before sentencing, when there's obviously an interest in attempting to get the best deal here." Prior to that time, Brown took no steps to accept responsibility or show remorse.

Affirmed.

OAKES, Chief Judge, concurring:
I concur in the result only.