Rockingham
No. 95-707

THE STATE OF NEW HAMPSHIRE

v.

MATTHEW MCMINN

March 7, 1997

*Jeffrey R. Howard*, attorney general (*Jeffrey S. Cahill*, assistant attorney general, on the brief and orally), for the State.

*Gary Apfel*, assistant appellate defender, of Orford, by brief and orally, for the defendant.

HORTON, J. Following a jury trial in Superior Court (*Gray*, J.), the defendant, Matthew McMinn, was convicted of criminal mischief, see RSA 634:2 (1996), and riot, see RSA 644:1, I(a) (1996). On appeal, the defendant argues that the trial court erred in: (1) denying his request for a mistrial based on circumstances surrounding the disclosure of perjured testimony; and (2) refusing to instruct the jury on the issue of self-defense. We affirm the conviction for criminal mischief, reverse the conviction for riot, vacate the sentences, and remand.

Although there was conflicting testimony at trial on several points, the State presented evidence from which the jury could have found the following facts. At approximately midnight on October 14, 1994, the defendant and a companion, Joey LaBonville, were walking down a sidewalk at a shopping center in Londonderry when a car containing Shayne Burke, Todd Degryse, and Timothy Bristol drove past them. After the car passed by the defendant and LaBonville, Bristol asked Burke to stop the car because he had seen something, possibly an object thrown at the car, "out of the corner of [his] eye." When Burke complied, Bristol emerged from the car and exchanged words with the defendant and LaBonville. The words escalated to violence, however, when the defendant and LaBonville suddenly attacked Bristol. Before Degryse or Burke could come to Bristol's defense, Joshua McMinn, the defendant's brother, arrived at the scene and temporarily disabled Degryse with a kick to the knee. Burke's effort to use her "pepper spray" on the attackers backfired; the wind blew the spray into Degryse's eyes. Having quickly gained the upper hand in the melee, the defendant and his companions kicked and beat Bristol as Degryse and Burke attempted to summon help at a nearby store. At some point during the incident, either LaBonville or Joshua McMinn produced a cut-down pool cue and used it as a weapon to beat Bristol. When the defendant and his two companions were finished with Bristol, they proceeded to damage Burke's car by jumping on the hood and roof, breaking its windows, and smashing its lights.

After the State charged the defendant with riot and criminal mischief for his role in the incident, the defendant filed notice of his intention to rely on the statutory defense of self-defense, see RSA 627:4, I (1996), with respect to the riot charge. See SUPER. CT. R. 101. The notice of defense essentially asserted that one of the

occupants of Burke's car had initiated the fight that formed the basis for the riot indictment.

## I. Mistrial

The defendant's arguments concerning the trial court's denial of his mistrial request center on the testimony of LaBonville. Prior to the defendant's trial, LaBonville had pleaded guilty to felony criminal mischief and simple assault for his role in the altercation. Called as a witness by the State, LaBonville initially testified that: one of the occupants of the car started the fight by charging and swinging at the defendant; LaBonville, in an effort to protect the defendant and himself, started fighting with a different occupant of the car; the "baton" (pool cue) was introduced by one of the car's occupants, not by anybody on the defendant's side; LaBonville was the only person who damaged Burke's car; and Joshua McMinn never jumped on Burke's car. LaBonville's account of the fracas conflicted in material respects with those of Burke, Degryse, and Bristol, who had previously testified that the defendant and LaBonville started the fight by attacking Bristol, that somebody on the defendant's side produced the pool cue, and that at least two, and probably three, individuals caused the damage to Burke's car.

At the conclusion of the State's direct examination of LaBonville, the defendant's attorney informed the trial judge, outside the presence of the jury, that he believed that "something which is less than truthful" had been presented to the jury. The defendant's attorney further explained "that the testimony that was given [by LaBonville] was unexpected by me as a result of my prior involvement with my investigation of this case and specifically my discussions with this particular witness." The defendant's attorney did not identify any particular aspects of LaBonville's testimony that were inconsistent with the results of his pretrial investigation.

Upon hearing this, the trial judge addressed LaBonville:

> If you continue your testimony, that's up to you, but I am going to order the County Attorney to investigate your testimony and the statements that you have made to other people and if a perjury charge is in order, they'll bring it, and if you're tried of perjury and are convicted of perjury, the penalty is three-and-one-half to seven years in New Hampshire State's Prison and it will be tried, if it is tried, in front of me and if you are convicted of perjury in front of me, I will put you in the New Hampshire State Prison for three and one-half to seven years, guaranteed. You are looking right in the eyes of your worst nightmare if you are lying on the stand.

Shortly after the trial judge's warning, LaBonville stated that he wanted to change "a couple things" in his testimony. When the jury returned to the courtroom, the trial judge informed it of LaBonville's desire to revise certain testimony. During the renewed direct examination by the State, LaBonville acknowledged that he was now aware of the penalties for perjury and testified that he *and* Joshua McMinn caused the damage to Burke's car. LaBonville maintained that he did not know where the defendant was during the time that LaBonville and Joshua McMinn were jumping on the vehicle. LaBonville continued to claim that the pool cue was produced by one of the occupants of Burke's car.

After reminding LaBonville of their previous discussions about the incident, the defendant's attorney cross-examined LaBonville as follows:

|  |  |
|---|---|
| [DEFENSE COUNSEL]: | [D]o you recall me telling you that the only way that [the defendant] could get a fair trial is if when you took the witness stand, you told the absolute truth about your recollection of the events? |
| [LABONVILLE]: | What I can remember, I am telling. |
| [DEFENSE COUNSEL]: | Let's be straight with this jury, okay? What you told this jury the first time you testified was that somebody in the car had that club? |
| [LABONVILLE]: | Yeah. That's not true. |
| [DEFENSE COUNSEL]: | That's not true, is it? |
| [LABONVILLE]: | No. |
| [DEFENSE COUNSEL]: | And you do, in fact, know where that club came from? |
| [LABONVILLE]: | The vehicle that we were in. |
| [DEFENSE COUNSEL]: | All right. And you do, in fact, know who brought the club into the fight? |
| [LABONVILLE]: | Yep. |
| [DEFENSE COUNSEL]: | Why don't you tell the jury the truth. |

[LABONVILLE]: I did. I've been. I'm trying to do that right now.

[DEFENSE COUNSEL]: What is the name of the person that brought the club into the fight?

[LABONVILLE]: Josh[ua McMinn].

The defendant's attorney then elicited testimony from LaBonville that Joshua McMinn did not join the fight until a few minutes after it began and that Joshua McMinn's ultimate entry into the fracas was unexpected by both the defendant and LaBonville.

At the conclusion of LaBonville's testimony, the State called a police officer who briefly testified about his role in the apprehension of the defendant and his discovery of a cut-down pool cue in the vehicle transporting the defendant and his companions. During a recess that immediately followed the police officer's testimony, the defendant personally addressed the court:

> Your Honor, I think this whole day has been a disaster and, I mean, I don't think that — I don't think things are going too well. I have a request for the Court to take [my attorney] off of my case and I'd appreciate it if I could get a new trial, a fair trial.

The defendant's attorney similarly requested permission to withdraw from the case and a new trial for the defendant, citing the defendant's loss of confidence in him as a result of the events surrounding LaBonville's testimony. The trial court denied the requests, determining that it was too late in the trial to request new counsel and that the defendant's attorney was providing both competent representation to the defendant and appropriate information about possible perjury to the court. Although the trial court acknowledged that the LaBonville incident "didn't do [the defendant] any good," it concluded that the defendant was "getting a fair trial." The court further determined that neither the State nor the defendant bore responsibility for the circumstances surrounding LaBonville's testimony.

On appeal, the defendant first argues that the trial court erred in failing to grant a mistrial. The defendant contends that the mere fact that LaBonville apparently provided false testimony in an attempt to aid the defendant — and then changed that testimony in front of the jury — made it "impossible for the jury to dispassionately weigh the evidence." Relying on *Webb v. Texas*, 409 U.S. 95 (1972), the defendant also points to the trial court's "coerc[ive]" and

"lengthy excoriation" of LaBonville as an independent basis for a mistrial. The State initially counters with the assertion that neither. of these arguments is preserved for our review. According to the State, the defendant's "general" request for a new trial during a court recess was both untimely and insufficient to inform the trial court of the grounds for the request. The State also contends that the defendant never objected to the nature or wording of the perjury warning given to LaBonville.

"The general rule in this jurisdiction is that a contemporaneous and specific objection is required to preserve an issue for appellate review." *State v. Russo*, 140 N.H. 751, 753, 674 A.2d 156, 158 (1996) (quotation omitted). This rule, which is based on "common sense and judicial economy," *State v. Johnson*, 130 N.H. 578, 587, 547 A.2d 213, 218 (1988), recognizes that "trial forums should have an opportunity to rule on issues and to correct errors before they are presented to the appellate court." *State v. Tselios*, 134 N.H. 405, 407, 593 A.2d 243, 245 (1991). Guided by these principles, we have held issues preserved when a slight delay in a litigant's objection nonetheless afforded the trial court with ample opportunity to correct the alleged error, *see State v. Cooper*, 135 N.H. 258, 260, 603 A.2d 499, 500-01 (1992); *State v. LaBranche*, 118 N.H. 176, 179, 385 A.2d 108, 110 (1978), and when the trial court understood and therefore addressed the substance of a relatively vague objection, *see State v. King*, 136 N.H. 674, 677, 621 A.2d 921, 922 (1993); *State v. Judkins*, 128 N.H. 223, 224-25, 512 A.2d 427, 428 (1986). Conversely, we have treated issues as unpreserved when a litigant's delay foreclosed effective remedial action by the trial court, *see Broderick v. Watts*, 136 N.H. 153, 167-68, 614 A.2d 600, 609 (1992); *State v. Ryan*, 135 N.H. 587, 588-89, 607 A.2d 954, 955 (1992), and when the vagueness and generality of an objection failed to alert the trial court to the basis of the argument, *see State v. Thaxton*, 122 N.H. 1148, 1152, 455 A.2d 1016, 1018 (1982).

In this case, we conclude that the defendant's request for a "new trial, a fair trial" sufficiently preserved his mistrial argument based on the revelation of LaBonville's apparently false testimony and the subsequent revisions to that testimony. In reaching that conclusion, we note that the defendant's request was not only followed by a request from his attorney which specifically adverted to the LaBonville incident, but was also interpreted by the trial court, at least in part, as a claim that the LaBonville incident had rendered the trial unfair. Furthermore, the request, though somewhat delayed, provided the trial court with an adequate opportunity to take remedial action or to declare a mistrial if LaBonville's testimony had so infected the proceeding that it had become incurably unfair.

■ We reach a different conclusion, however, with respect to the defendant's argument concerning the coercive nature of the trial judge's perjury warning. Our review of the record reveals that the defendant never raised — or even alluded to — this argument below. Furthermore, any objection on this basis should have been made when the trial court concluded its warning and before LaBonville resumed his testimony; any objection would have been untimely when the defendant personally addressed the court because, at that point, LaBonville had already changed his testimony before the jury.

■ Turning to the merits of the defendant's argument based on the effect of LaBonville's false testimony, we review the trial court's denial of the mistrial request for an abuse of discretion. *State v. Giordano*, 138 N.H. 90, 94, 635 A.2d 482, 484 (1993). Our deferential standard of review recognizes that a mistrial is only warranted if the challenged testimony or event is "so prejudicial that it constitutes an irreparable injustice that cannot be cured by jury instructions," *id.* (quotation omitted), and derives from the "trial court's optimal vantage point for measuring prejudicial effect," *State v. Roy*, 140 N.H. 478, 482, 668 A.2d 41, 45 (1995) (quotation omitted).

Here, we find no abuse of discretion in the trial court's failure to declare a mistrial. Although the trial court acknowledged that the LaBonville incident was marginally prejudicial in that it "didn't do [the defendant] any good" for the jury to learn that his companion had lied, the court expressly determined that the defendant was nonetheless "getting a fair trial." We note that LaBonville's testimony, in both its original and revised forms, tended to exculpate the defendant by showing that Bristol started the fight, that the defendant neither introduced the pool cue into the fight nor anticipated its introduction, and that the defendant never damaged the car. Even LaBonville's revised testimony concerning Joshua McMinn's role in the altercation supported the defendant's theory on the riot charge: that Joshua McMinn's late and unexpected arrival prevented the State from establishing that the defendant acted *simultaneously* with two other persons. *See* RSA 644:1, I(a). Accordingly, the *substance* of LaBonville's original and revised testimony was hardly prejudicial — and the defendant does not contend otherwise. The exculpatory nature of LaBonville's testimony supports the trial court's denial of the mistrial request. *See State v. Jones*, 133 N.H. 562, 564, 578 A.2d 864, 865 (1990); *cf. State v. Rogers*, 138 N.H. 503, 505, 642 A.2d 932, 934 (1994) (mistrial not required if challenged evidence is ambiguous as to inculpation).

■ Moreover, we reject the defendant's contention that the mere revelation of possible perjury by LaBonville, his companion, irreparably prejudiced him before the jury. Without some indication of prosecutorial bad faith or incurable prejudice resulting from the substance of the testimony, the presence of false testimony in a criminal case does not constitute irreparable injustice requiring a mistrial. *See United States v. Blair*, 958 F.2d 26, 28-29 (2d Cir. 1992) (mistrial not required where government's key witness, a participant in defendant's drug transactions, testified perjuriously); *United States v. Arruda*, 715 F.2d 671, 683-84 (1st Cir. 1983) (mistrial not required where prosecution witness, one of defendants' unindicted co-conspirators, provided false testimony); *see also Johnson v. State*, 587 A.2d 444, 447 (Del. 1991); *State v. Joyce*, 410 S.E.2d 516, 520 (N.C. Ct. App. 1991). The two cases urged by the defendant on this point are readily distinguishable in that each involved an appellate court's decision to *affirm* — under an abuse of discretion standard — the *grant* of a mistrial. *See Baker v. State*, 289 A.2d 348, 361-64 (Md. Ct. Spec. App. 1972), *cert. denied*, 410 U.S. 969 (1973); *State v. Reid*, 479 N.W.2d 572, 574-75 (Wis. Ct. App. 1991), *review denied*, 485 N.W.2d 413 (Wis. 1992). A trial court's discretion is not abused simply because a different court might have reached a permissible contrary conclusion. *See Chinburg v. Chinburg*, 139 N.H. 616, 619, 660 A.2d 1127, 1129 (1995); *Kierstead v. Betley Chevrolet-Buick, Inc.*, 118 N.H. 493, 497, 389 A.2d 429, 432 (1978).

■ Finally, we find no merit in the defendant's suggestion that the trial court's failure to take any remedial action contributed to the prejudice from the LaBonville incident. The defendant never asked the trial court to take remedial action, which might have included an instruction reflecting the court's determination that the defendant was not responsible for LaBonville's false testimony. "It was the obligation of the defendant to request curative instructions, and his failure to do so does not justify a reversal of his conviction." *State v. Hunter*, 132 N.H. 556, 562, 567 A.2d 564, 568 (1989).

*II. Jury Instruction Regarding Self-Defense*

■ The defendant further argues on appeal that the trial court erred in refusing to provide a jury instruction regarding self-defense on the riot charge. The State does not dispute that self-defense is an available defense to riot. *See* RSA 627:1 (1996) (conduct which is justifiable as self-defense "constitutes a defense to any offense"). "A requested instruction on a party's theory of defense must be given if such theory is supported by some evidence,

and refusal to charge on that defense is reversible error." *State v. Hast*, 133 N.H. 747, 749, 584 A.2d 175, 176 (1990) (quotations and brackets omitted). Once evidence of self-defense is admitted, an instruction is required even if the evidentiary support is "not overwhelming," *id.*, 584 A.2d at 177, because the State bears the burden of disproving this statutory defense beyond a reasonable doubt, *see* RSA 626:7, I(a) (1996); *cf. State v. Soucy*, 139 N.H. 349, 352-53, 653 A.2d 561, 564 (1995) (discussing the evidentiary support requiring a jury instruction on a defense that the State must disprove beyond a reasonable doubt). Moreover, when evidence of self-defense is admitted, conduct negating the defense becomes an *element* of the charged offense, *see* RSA 625:11, III(c) (1996), which the State must prove beyond a reasonable doubt, RSA 625:10 (1996).

In this case, the trial court reasoned that "there was no evidence that the defendant acted in self-defense other than the testimony of one witness which was admittedly perjured." To the extent that the trial court believed that LaBonville actually retracted *all* his testimony relevant to the defendant's claim of self-defense, the trial court erred. LaBonville only abjured his initial assertions that LaBonville alone damaged the car and that the pool cue was produced by one of the car's occupants; he did not recant his testimony that Bristol started the fight. To the extent that the trial court alternatively concluded that *none* of LaBonville's testimony was credible once he admitted lying on certain points, the trial court also erred. The "jury is entitled to believe *any* witness," *State v. Fraser*, 120 N.H. 117, 122, 411 A.2d 1125, 1128 (1980) (emphasis added); the ancient maxim, *falsus in uno, falsus in omnibus*, does not authorize a conclusion that testimony is incredible as a matter of law. *See* 4 C. TORCIA, WHARTON'S CRIMINAL PROCEDURE § 472, at 50-51 (13th ed. 1992); *see also Rowland v. Bank*, 93 N.H. 246, 249, 40 A.2d 741, 742 (1944).

Perhaps recognizing these points, the State now seeks to justify the trial court's ruling on other grounds. According to the State, the defendant's claim of self-defense must be measured against the specific charged offense of riot. Pointing to the statutory requirement that the defendant act simultaneously with two other persons, *see* RSA 644:1, I(a), and claiming that the conduct underlying the riot charge was the defendant's participation with LaBonville and Joshua McMinn in the "three-on-one beating" of Bristol, the State argues that there was no evidence that the defendant acted in self-defense at the "critical time period" when "the crime of [r]iot was occurring." The State therefore contends that LaBonville's unretracted testimony, focusing on events prior to

Joshua McMinn's arrival, provides no evidence of self-defense to the riot charge.

A threshold problem with the State's argument is that it conflicts with the language of the riot indictment. The indictment, alleging that the defendant "simultaneously with two other persons" engaged "in a fight which resulted in Tim Bristol and Todd Degryse suffering physical injuries," portrays a three-versus-two, rather than a three-versus-one, fight. The court read the riot indictment to the jury at the commencement of the trial and again during jury instructions at the conclusion of the trial. In addition, the prosecution's opening statement conformed to the indictment's premise: "And the evidence in this case is that the three of them were involved in this beating of the two individuals. Three or more individuals engage in violent conduct and we're saying that this assault, this attack on these kids . . . is the crime of riot."

Although there was substantial evidence adduced at trial that the defendant indeed participated in a "three-on-one beating" of Bristol, our function in reviewing the trial court's refusal to provide a requested self-defense instruction is to "search the record for evidence supporting the defendant's request[]." *Hast*, 133 N.H. at 747, 584 A.2d at 175. After doing so, we conclude that there was some evidence that such a beating never occurred and that the defendant acted, throughout the altercation, under a reasonable belief that his conduct was necessary to defend himself. *See* RSA 627:4, I. For example, LaBonville testified that Bristol attacked the defendant and that the defendant and LaBonville merely sought to protect themselves by fighting with Bristol and Degryse. LaBonville also claimed that he thought "there were three guys" in Burke's car. Despite Burke's disagreement with LaBonville's characterization of the reason for the initial altercation, her testimony supported LaBonville's assertion that the incident began as a fight pitting the defendant and LaBonville against Bristol and Degryse. Several witnesses agreed that Joshua McMinn arrived *after* the fight began, and the evidence did not rule out an inference that he joined the fight in order to protect the defendant.

Furthermore, Burke described a brawl, after Joshua McMinn's entry, in which two people fought Bristol while a third engaged Degryse. According to Burke, she then attempted to help Bristol, who was on the ground, by using her "pepper spray"; although she failed to hit her intended targets with the spray, Burke succeeded in getting one of the two individuals to leave Bristol. Burke's testimony suggested that Bristol remained sufficiently vigorous at this point to prevent that individual from striking Burke. There was

some evidence that the defendant and his companions then turned their attention to Burke's car.

After considering this evidence, LaBonville's characterization of the entire fight as "real, real quick," and the absence of a uniform sequential account of the participants' actions and counteractions, we fail to see how the evidence can be segregated, as a matter of law, into the discrete analytical components urged by the State. We therefore hold that the defendant was entitled to a self-defense instruction on the riot indictment, and the trial court's refusal to charge the jury on this theory of defense was error.

Finally, the superior court imposed a sentence for the criminal mischief conviction that was suspended and consecutive to the sentence for the riot conviction. In view of the result reached, we vacate both sentences and remand to permit resentencing.

*No. 94-S-1833 affirmed; no. 94-S-1831 reversed; sentences vacated; remanded.*

All concurred.