Hillsborough-northern judicial district
No. 95-648

## THE STATE OF NEW HAMPSHIRE

v.

## EDWARD SILVA

August 25, 1997

*Jeffrey R. Howard*, attorney general (*Jeffrey S. Cahill*, assistant attorney general, on the brief and orally), for the State.

*Brennan, Caron, Lenehan & Iacopino*, of Manchester (*Michael J. Iacopino* and *Kathleen A. Hickey* on the brief, and *Mr. Iacopino* orally), for the defendant.

JOHNSON, J. Following a jury trial in the Superior Court (*Conboy, J.*), the defendant, Edward Silva, was convicted of three counts of aggravated felonious sexual assault, RSA 632-A:2 (1986) (amended 1992, 1994, 1995). He appeals, arguing that: (1) he was convicted on evidence of crimes that was not presented to the grand jury; (2) there was insufficient evidence to sustain the convictions; and (3) the superior court erred in both the substance and the timing of a "jury deadlock" instruction. We affirm.

The victim in these assaults was the defendant's nephew. The offenses occurred during July 1992, when the victim was eight years old and living in Manchester. Both of the victim's parents worked full-time, which necessitated that the victim be cared for during the summer days by his grandmother, who also lived in Manchester.

The defendant lived in Union City, New Jersey, where he shared an apartment with a friend. In 1992, he was employed part-time in telemarketing, and during the month of July, he worked from 5:30 p.m. to 9:30 p.m., Sunday through Thursday. His schedule permitted him to travel to New Hampshire, a trip of approximately four and one-half to five hours, to visit friends and family members. He made the trip on a number of occasions. He maintained a bedroom in his parents' home in Manchester, which the victim referred to as "Uncle Eddie's" room.

The defendant was indicted on April 1, 1993, for one count of aggravated felonious sexual assault, RSA 632-A:2, and one count of

felonious sexual assault, RSA 632-A:3 (1996). These indictments were *nol prossed* shortly before the scheduled trial, and four new indictments were returned on April 2, 1994. The new indictments included the original two indictments, plus two more indictments for aggravated felonious sexual assault. The three 1994 indictments for aggravated felonious sexual assault included two acts of penetration (digitally and by tongue), and one act of fellatio. The digital penetration indictment stated only that the offense occurred in Manchester, while the other two charges specified that they occurred at the victim's grandparents' home. The defendant did not seek, through a bill of particulars, to ascertain the alleged location within Manchester of the criminal conduct underlying the digital penetration indictment.

The indictments also alleged that the sexual assaults occurred during the month of July 1992. The defendant maintained, however, that he never traveled to New Hampshire during that month. He thus asserted an alibi defense that he had no opportunity to commit the charged offenses. At the close of the trial, the defendant requested, and the trial court gave, an instruction that the jury had to find that the sexual assaults occurred during the month of July 1992. The jury returned findings of guilty in three indictments charging the defendant with aggravated felonious sexual assault and a finding of not guilty as to one indictment of felonious sexual assault. After trial, the defendant moved to set aside the verdicts and for a new trial. The superior court denied both motions, and this appeal followed.

## I. Grand Jury Indictments

The defendant first asserts that he was convicted on evidence of crimes which was never presented to the grand jury. The defendant argues that there were variances in the evidence presented before the grand jury and the evidence presented to the trial jury. Hence, he asserts that his convictions are constitutionally flawed because the defendant "was tried and convicted for crimes which were never presented to a grand jury."

As a preliminary matter, we note that following the defendant's conviction, the trial court held a post-trial hearing to determine what evidence had been presented to the grand jury. The trial court allowed the defendant, over the State's objection, to invade the secrecy of the grand jury process by inquiring into the substance of the investigating officer's testimony before the grand jury. Although the issue is not before us on appeal, we take this

opportunity to remind trial courts of their duty to scrupulously protect the sanctity of grand jury proceedings. Our constitution does not grant defendants the right to examine grand jury testimony. *State v. Booton*, 114 N.H. 750, 753, 329 A.2d 376, 380 (1974), *cert. denied*, 421 U.S. 919 (1975). "It has long been the policy of the law, in furtherance of justice, that the investigations and deliberations of a grand jury should be conducted in secret, and that for most intents and purposes, all its proceedings should be legally sealed against divulgence." *Opinion of the Justices*, 96 N.H. 530, 531, 73 A.2d 433, 435 (1950). Our law presumes that the proceedings before the grand jury are sacrosanct, and they may not be invaded by a defendant to challenge an indictment or a conviction on the grounds that testimony before a grand jury was at odds with testimony later received at trial.

■ There is no dispute that the defendant has a constitutional right to have a grand jury consider the evidence and decide whether or not to return an indictment against him. *State v. Erickson*, 129 N.H. 515, 518-19, 533 A.2d 23, 24-25 (1987). While the defendant has a constitutional right to have the indictment clearly state the conduct which the grand jury found to be in violation of the Criminal Code, *State v. Fennelly*, 123 N.H. 378, 386, 461 A.2d 1090, 1094 (1983), he does not have a constitutional right to have all of the evidentiary details that the State intends to present at trial included in the indictment. *Id.*

■ Here, we find no error simply because there may have been a variation between the evidence presented to the grand jury and that heard by the trial jury. The defendant was tried for the same crime, aggravated felonious sexual assault, since there was no variance between the *elements* of the criminal act alleged in the digital penetration indictment and the proof offered at trial.

■ As to the other two indictments, the defendant challenges them on the basis that the officer's testimony before the grand jury was not as detailed as the victim's testimony at trial. Again, we note that the State is not required to present to the grand jury all of the evidentiary details that will be presented at trial. *Cf. Fennelly*, 123 N.H. at 386, 461 A.2d at 1094. The State merely has to present the grand jury with evidence of criminal conduct. *Cf. id.* Once the grand jury indicts, the State may present additional evidentiary detail to the trial jury. Accordingly, we find no error.

## II. Sufficiency of the Evidence

The defendant next argues that there was insufficient evidence to sustain his convictions. The defendant focuses his argument on the alleged failure of the State to prove that the crimes occurred in July 1992 and that he was physically present in the State that month. The jury was instructed that they had to find that the crimes occurred in July 1992. *See State v. Carter*, 140 N.H. 114, 119, 663 A.2d 101, 104 (1995). In order for the defendant to succeed, he must persuade us "that no rational trier of fact could have found guilt beyond a reasonable doubt, viewing the evidence in the light most favorable to the State." *State v. Simpson*, 133 N.H. 704, 706, 582 A.2d 619, 620 (1990).

The defendant's central argument is that in testifying the victim himself never uttered the word "July." In response to the prosecutor's questions relating to the incidents, the victim on a number of occasions answered affirmatively, without objection, that the defendant committed the crimes alleged and that the events occurred in July 1992. On several occasions the victim, in response to cross-examination, stated he could not remember when the events occurred.

The defendant argues that the victim's equivocation on cross-examination leaves the State with "no direct evidence that the alleged assaults actually occurred during the month of July, 1992." We disagree. There was ample evidence from which the jury could find that the events occurred in July. Simply because the victim equivocated does not diminish the fact that the jury heard ample testimony from which they could find that the crimes were committed in July 1992. The victim's equivocation did not obliterate his testimony as to the dates of the crimes, although it likely detracted from its strength. "[T]he jury was well within its fact-finding discretion to discount the cross-examination testimony in favor of [his] statements under direct examination." *State v. Giles*, 140 N.H. 714, 717, 672 A.2d 1128, 1129 (1996). We find there was sufficient evidence at trial to allow the jury to conclude that the crimes were committed by the defendant in New Hampshire in July 1992.

## III. Jury Instructions

Finally, the defendant contends the trial court erred in responding to the jury's note that they were "deadlocked." The jury began to deliberate at approximately 1:00 p.m. on May 15, 1995, and continued until 4:35 p.m. At that time the jury advised the court that they were deadlocked and requested guidance.

■ In *State v. Jordan*, 130 N.H. 48, 50, 534 A.2d 378, 379 (1987), we set forth approved language for a court to instruct a jury in a case of deadlock. The trial court instructed the jury in accordance with *Jordan*, but added the following:

> While you do not have an obligation to decide this case, you do have an obligation to make a conscientious effort to do so.

> You should understand that in the event you are unable to render a unanimous verdict, the Court will declare a mistrial, which will involve the case being retried at a later date before a different jury panel. There is no reason to believe that a new jury after a retrial will have any evidence different from that which has been presented to you or that that new jury will in any manner be able better to decide the case than you. Therefore, I am asking you to continue your deliberations. You must use your best efforts to determine whether the State has met its burden to prove the elements of the crimes with which the defendant stands charged beyond a reasonable doubt. Keep in mind that the burden of proof rests solely with the State.

We believe that it is preferable for a trial judge to use only the wording of the recommended charge in *Jordan*. However, in reviewing these additional statements, we do not find the language to be of a coercive nature that would improperly sway a jury to reach a unanimous verdict. *See Jordan*, 130 N.H. at 51, 534 A.2d at 379. We find no error in the substance of the instruction.

■ The defendant also objects to the fact that the court instructed the jury after a relatively short period of deliberation. "There is no *per se* rule to determine how long is too long for a jury to deliberate; it is a matter within the sound discretion of the trial court." *State v. Glidden*, 123 N.H. 126, 136, 459 A.2d 1136, 1142 (1983). We find no abuse of discretion in the trial court giving a jury deadlock instruction at a time when the jury has informed the court that they are indeed deadlocked.

*Affirmed.*

All concurred.