Rockingham
No. 95-816

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL E. WILLIAMS

March 18, 1998

*Steven M. Houran*, acting attorney general (*Richard J. Lehmann*, attorney, on the brief and orally), for the State.

*Richard N. Foley*, of Portsmouth, by brief and orally, for the defendant.

BRODERICK, J. Following a jury trial, the defendant, Michael E. Williams, was convicted of disobeying an officer and aggravated driving while intoxicated. *See* RSA 265:4 (1995); RSA 265:82-a (1995) (amended 1996). On appeal, the defendant argues that the Superior Court (*McHugh*, J.) erred in denying both his pretrial motion to dismiss the charge of disobeying an officer and his pretrial motion to suppress certain items seized from his vehicle during the execution of a search warrant. The defendant also appeals the superior court's denial of his motion for a new trial. We affirm.

On April 9, 1994, Massachusetts and New Hampshire police officers pursued a Ford Mustang in an extended and often high-speed chase that began in Haverhill, Massachusetts, and ended in Atkinson when the vehicle crashed into a tree. Both occupants of the vehicle, the defendant and Robert Marena, suffered serious injuries requiring hospitalization. The defendant was later identified as the operator of the vehicle and charged with disobeying a police officer and aggravated driving while intoxicated.

At the trial, Officer Paul Malone of the Haverhill Police Department testified that in the early morning hours of April 9, 1994, he activated his emergency lights and followed the defendant's vehicle. Officer Malone observed the vehicle lose control, strike a building in downtown Haverhill, and continue traveling at a high rate of speed. The vehicle crossed the yellow line on numerous occasions and ran through several red lights. In Plaistow, Officer Scott Anderson of the Plaistow Police Department joined the pursuit.

Officer Anderson testified that while the vehicle was traveling at approximately twenty-five miles per hour, he observed a white male wearing a brown leather jacket and a baseball cap and identified the defendant as the operator of the vehicle. The officers chased the defendant through Plaistow and into Atkinson where the vehicle crashed into a tree. Upon arriving at the scene, the officers observed

two persons, the defendant and Marena, in the hatchback portion of the vehicle. Officer Malone testified that he overheard the defendant admit that he was the operator of the vehicle to a member of the emergency medical team.

New Hampshire Highway Enforcement Officer Steven Hanley testified that an inspection of the defendant's vehicle did not reveal any defective components that may have directly caused or contributed to the accident. Pursuant to a search warrant, Officer Hanley seized several items from the vehicle including an empty six-pack cardboard beer container and an empty beer bottle. A technical reconstruction of the accident scene revealed that the defendant's vehicle was traveling over 100 miles per hour just prior to the crash.

Robert Marena, the other occupant of the vehicle, testified that he was not operating the defendant's vehicle at the time of the crash. On cross-examination, Marena stated that he wore a blue denim jacket with a leather collar on the evening of April 8, 1994. Defense witness Wallace Williams, the defendant's father, testified that while at the hospital on the morning of the accident, a staff member handed him two bags containing the defendant's and Marena's personal effects. Williams testified that Marena's bag contained a brown jacket. Williams also testified that while inspecting the vehicle he noticed the defendant's sunglasses located on the right hand side of the vehicle and Marena's sneaker under the driver's seat.

In his closing argument, the defendant argued that he was not operating the vehicle at the time of the pursuit and crash. The jury convicted the defendant on the charges of disobeying an officer and aggravated driving while intoxicated. Following the jury verdict, the defendant moved for a new trial. The superior court denied the motion.

## I

Prior to trial, the defendant moved to dismiss the indictment for disobeying an officer, *see* RSA 265:4, alleging that the grand jury considered inadmissible evidence in its deliberations. The grand jury found probable cause to believe that

> while operating a Ford Mustang motor vehicle on Route 121, [the defendant] purposely neglected to stop when signaled to stop by Officer Scott Anderson who signaled him to stop by means of authorized audible and visual warning signals resulting in a collision while evading pursuit which caused Robert Marena to sustain personal injuries . . . .

The defendant contends that the grand jury violated his right to due process under part 1, article 15 of the New Hampshire Constitution when it subpoenaed and obtained Marena's privileged medical records to show that the collision caused personal injury. *See* RSA 329:26 (Supp. 1996); N.H. R. EV. 503.

"It has long been the policy of the law, in furtherance of justice, that the investigations and deliberations of a grand jury should be conducted in secret, and that for most intents and purposes, all its proceedings should be legally sealed against divulgence." *Opinion of the Justices*, 96 N.H. 530, 531, 73 A.2d 433, 435 (1950) (quotation omitted). Our law presumes that proceedings before the grand jury are sacrosanct, and they may not be invaded by a defendant to challenge an indictment or conviction on the grounds that the grand jury subpoenaed privileged medical records of a third party. *Cf. State v. Silva*, 142 N.H. 269, 272, 699 A.2d 591, 593 (1997) (emphasizing that "[o]ur constitution does not grant defendants the right to examine grand jury testimony"). Moreover, the United States Supreme Court has emphasized that an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on inadequate or incompetent evidence, or even on information obtained in violation of a defendant's right against self-incrimination or fourth amendment rights. *See United States v. Williams*, 504 U.S. 36, 48-50 (1992); *United States v. Calandra*, 414 U.S. 338, 345 (1974); *see also State v. St. Arnault*, 114 N.H. 216, 218, 317 A.2d 789, 791 (1974); *State v. Blake*, 113 N.H. 115, 119, 305 A.2d 300, 303 (1973). The Supreme Court, however, has recognized the grand jury itself may not violate a valid constitutional or statutory privilege. *See Calandra*, 414 U.S. at 346. In the present case, the grand jury violated neither a constitutional nor a statutory privilege *of the defendant* when it subpoenaed *Marena's* medical records.

"While the defendant has a constitutional right to have the indictment clearly state the conduct which the grand jury found to be in violation of the Criminal Code," *Silva*, 142 N.H. at 272, 699 A.2d at 593, the defendant does not have a constitutional right to test the propriety of the grand jury's finding when neither a constitutional nor a statutory privilege of the defendant has been infringed. *Cf. id.* Accordingly, the trial court appropriately denied the defendant's pretrial motion to dismiss the indictment.

## II

Prior to trial, the defendant also moved to suppress a beer bottle and an empty six-pack cardboard beer container seized from his

vehicle pursuant to a search warrant. The defendant argues that Officer Hanley's supporting affidavit failed to establish probable cause necessary for the issuance of a search warrant under part I, article 19 of the New Hampshire Constitution. Specifically, the defendant claims that the affidavit fails to aver facts creating a nexus between the items sought (mechanical parts, drugs, and alcohol) and the crime under investigation (disobeying an officer).

Prior to conducting a post-accident vehicle inspection to determine what may have caused or contributed to the accident, Officer Hanley obtained a search warrant. The affidavit sets forth the basis of knowledge for Officer Hanley's statements and recites that he received specialized training in the investigation of motor vehicle accidents and has conducted numerous post-accident vehicle inspections over the past ten years. The affidavit further states that Trooper Mark Thibodeau, a member of the New Hampshire State Police accident reconstruction team, responded to the scene and calculated that the defendant's vehicle traveled at a minimum speed of 106 miles per hour just prior to the crash.

Following an explanation of the accident that did not include Officer Malone's observation of the defendant's vehicle striking a building in Haverhill, the supporting affidavit states, in pertinent part:

> Based on the circumstances of the accident, the State would request . . . a search warrant for the purpose of a vehicle inspection of the [defendant's] motor vehicle in order to determine if there were any mechanical deficiencies with the vehicle that may have caused or contributed to the accident. Based on the apparent involvement of alcohol, and or drugs, the state would request that the search warrant allow the seizure of any alcoholic beverages, alcoholic beverage containers, or any drugs or drug paraphernalia that may be found within the vehicle, which is considered evidence as to certain contributing factors in this accident.

The magistrate found probable cause to believe that drugs and alcohol may be present in the vehicle and issued a search warrant. The warrant authorized Officer Hanley to search the defendant's vehicle for "any mechanical parts . . . that may have contributed to or caused this motor vehicle to crash on April 9, 1994. Also any containers, full or empty of alcoholic beverages, and any drugs or drug paraphernalia found within the car that are evidence as to certain contributing factors in this accident." Pursuant to the search, Officer Hanley seized one empty beer bottle, one empty

six-pack cardboard beer container, and several other items. On appeal, the defendant argues that the trial court should have granted his motion to suppress because the supporting affidavit failed to establish any basis to believe that such items would be present in his vehicle. Assuming the bare affidavit did not establish probable cause to search the vehicle for mechanical defects, drugs, and alcohol, we hold that any erroneous admission of the bottle and six-pack container was harmless. *See State v. Eldridge*, 134 N.H. 118, 123, 588 A.2d 1222, 1225 (1991).

"Erroneous admission of evidence is harmless if it is determined, beyond a reasonable doubt, that the verdict was not affected." *Id.* We consider the alternative evidence presented at trial and the character of the inadmissible evidence itself. *State v. Vandebogart*, 139 N.H. 145, 157-58, 652 A.2d 671, 679 (1994). "An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight, and if the inadmissible evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt." *State v. Hennessey*, 142 N.H. 149, 158, 697 A.2d 930, 936 (1997) (quotation omitted). The burden to prove harmless error beyond a reasonable doubt rests with the State. *Id.*

Aside from Officer Hanley's testimony that he found a beer bottle and container in the defendant's vehicle, the State presented other evidence of the defendant's alcohol consumption. Officer Anderson testified that, at the accident scene, he overheard the defendant admit to drinking "five or six beers" to a member of the emergency medical team. *Cf. State v. Phinney*, 117 N.H. 145, 147, 370 A.2d 1153, 1154 (1977). In addition, Officer Robert Daniels testified to taking photographs on the day of the accident of "empty beer bottles and things of that nature" located inside the defendant's car. Accordingly, in light of this alternative evidence, admission of the items seized was cumulative and therefore harmless beyond a reasonable doubt.

## III

The defendant next argues that the superior court erred in denying his motion for a new trial on the basis of newly discovered evidence. The court denied the motion for a new trial, holding that the newly discovered evidence would not warrant a different result if the matter were retried.

Defense counsel became aware of a new witness, Derek Troian, after the jury rendered its verdict. At a hearing held on the

defendant's motion for a new trial, the defendant contended that Troian observed Marena wearing a brown jacket and a baseball cap several hours earlier on the evening in question. The defendant argues that Troian's observations would diminish the weight of Officer Anderson's testimony because Anderson's identification of the defendant as the vehicle operator was allegedly based upon the fact that the defendant wore a brown jacket and a baseball cap. The trial court denied the defendant's motion, holding that Troian's testimony would not produce a different result upon retrial.

"The question of whether a new trial should be granted on the basis of newly discovered evidence is a question of fact for the trial court." *State v. Abbott*, 127 N.H. 444, 450, 503 A.2d 791, 795 (1985). We will sustain the trial court's decision unless it "conclusively appear[s] that a different result is probable, so that the Trial Court's conclusion is clearly unreasonable." *Id.* (quotation omitted).

■ To obtain a new trial on the basis of newly discovered evidence, the moving party must establish: "(1) that the moving party was not at fault for not discovering the evidence at the former trial; (2) that the evidence is admissible, material to the merits, and not cumulative; and (3) that [the evidence is] of such a character that a different result will probably be reached upon another trial." *State v. Cote*, 129 N.H. 358, 370, 530 A.2d 775, 781-82 (1987) (quotations and ellipses omitted).

■ The newly discovered evidence in this case is not of such a character that a different result will probably be reached upon retrial. Troian's testimony as to what Marena allegedly wore earlier on the night in question would be unlikely to alter the jury's determination that the defendant operated the vehicle. For example, evidence that Marena also may have worn a brown jacket and a baseball cap would have little impact on Officer Anderson's testimony. Officer Anderson based his identification of the defendant as the operator of the vehicle not only on the fact that he wore a brown jacket and a baseball cap, but more importantly, on a direct observation of the defendant's face. Moreover, the newly discovered evidence would probably not warrant a different result given the fact that Officer Malone testified that he overheard the defendant admit to the emergency medical team that he was the driver of the vehicle.

The defendant also argues that a new trial is warranted because the newly discovered evidence would show that Marena perjured himself on cross-examination when he testified that he wore a blue jacket on the night in question. It is a question of fact for the trial

court as to whether newly discovered evidence suggesting perjury by a prosecution witness demands a new trial. *State v. Boisvert,* 119 N.H. 174, 177, 400 A.2d 48, 50 (1979). "[W]here the overriding question is the possible impact of newly discovered evidence on the credibility of a key prosecution witness, we must affirm the findings of the trial court so long as there is evidence to support them." *United States v. Strauss,* 443 F.2d 986, 990 (1st Cir.), *cert. denied,* 404 U.S. 851 (1971). In light of Officer Anderson's identification of the defendant as the driver of the vehicle and Officer Malone's testimony concerning the defendant's admission to the emergency medical team, we affirm the findings of the trial court.

## IV

The defendant also sought a new trial based upon an alleged failure of the State to provide complete discovery. On cross-examination Officer Malone testified that he overheard the defendant identify himself as the operator of the vehicle to a member of the emergency medical team. The defendant argues that if the State had disclosed this information prior to trial, he could have availed himself of his constitutional right to produce all proofs favorable to himself by investigation, summonsing witnesses, and cross-examining Officer Malone.

We do not address this issue because the defendant failed to preserve it for review on appeal. "The general rule in this jurisdiction is that a contemporaneous and specific objection is required to preserve an issue for appellate review." *State v. McMinn,* 141 N.H. 636, 642, 690 A.2d 1017, 1021 (1997) (quotation omitted); *see* N.H. R. Ev. 103(b)(1). "This rule, which is based on common sense and judicial economy, recognizes that trial forums should have an opportunity to rule on issues and to correct errors before they are presented to the appellate court." *McMinn,* 141 N.H. at 642, 690 A.2d at 1021 (quotations and citation omitted).

■■ In this case, the defendant failed to object contemporaneously to Officer Malone's testimony regarding the alleged admission of the defendant. In fact, the defendant did not object until the State's closing argument when it contended that the State argued facts not in evidence. We have treated issues as unpreserved when a litigant's delay foreclosed effective remedial action by the trial court. *See Broderick v. Watts,* 136 N.H. 153, 167-68, 614 A.2d 600, 609 (1992); *State v. Ryan,* 135 N.H. 587, 588-89, 607 A.2d 954, 955 (1992). Defense counsel conceded in his motion for a new trial and at oral argument that he failed to object at the time the statement was

made because "through accident, mistake or misfortune, [he] did not hear Officer Malone's statement of the defendant's purported admission." A litigant's failure to provide a contemporaneous and specific objection precludes appellate review regardless of the fact that counsel failed to hear the witness's testimony. We refuse to create exceptions to this longstanding rule for errors made by counsel through accident, mistake, or misfortune.

*Affirmed.*

All concurred.