DALIANIS, C. J.
Following a jury trial in Superior Court (Vaughan, J.), the defendant, Ashley Hayward, was convicted of one count of accomplice to robbery. See RSA 626:8 (2007); RSA 686:1 (2007). At trial, she asserted a duress defense, claiming that she was coerced into participating in the robbery by threats made against her by Tyler Dodge, her boyfriend and a co-participant in the robbery. On appeal, she argues that the trial court erred in precluding her from introducing evidence of Dodge’s past threatening and violent behavior. We reverse and remand.

I. Background

The jury could have found the following facts. On the night of January 9, 2012, the defendant and Dodge were visiting Dodge’s friend, Marvin Jones, at Jones’s residence in Arlington, Massachusetts. At some point, Jones, Dodge, and the defendant drove north in the defendant’s vehicle to the Baymont Inn in Lebanon, where the defendant had briefly been employed for a period ending about one month earlier. At approximately 12:30 a.m. on January 10, Dodge and Jones entered the lobby of the Baymont Inn with their faces obscured and robbed the front desk clerk of $220. They then returned to the defendant’s car, where she was waiting, and all three drove away.
. On January 18, 2012, officers from the Lebanon Police Department interviewed the defendant about the robbery. The defendant appeared upset, but denied knowledge of the robbery. When confronted with evidence of her involvement during a second interview later that day, the defendant initially denied participating in the robbery, but ultimately confessed to driving Dodge and Jones to and from the Baymont Inn. She explained that Dodge had threatened to “beat the shit out of her” if she did not drive them. During both interviews, the defendant cried and appeared scared and upset. She explained that Dodge was trying to change his life, *578 but “was getting out of control.” She told the officers that Dodge had difficulty managing his anger and that he would get angry at her very quickly. The defendant also explained that Dodge was very controlling, that “it was his way or the . . . highway,” and that they had gotten into a fight over Dodge’s intent to commit the robbery. During this interview, the defendant told the officers that if she had not driven Dodge to the robbery, he would have taken her car and “that would have been more of a fight,” and that she was “afraid [she] was going to get hurt and so [she] did what he asked.” She also stated that she did not call 911 because she did not want Dodge to go to jail and because she did not want to be implicated in the robbery.
The following day, the defendant was interviewed a third time. In that interview, she explained to officers that Dodge wanted to commit the robbery in part because they had no money and were hungry, and he wanted to buy the defendant food. She also said that she thought that she, Dodge, and Jones were going to Newport, New Hampshire to visit family, but that after reaching a toll booth in New Hampshire, Dodge stated that he wanted to rob the Baymont Inn.
Additionally, at some time during her interviews, the defendant told the officers that, in the past, Dodge threatened her when she did not do as he asked — including putting a knife to her throat.
Before trial, the State filed a motion in limine requesting, in pertinent part, that the trial court preclude the defendant from arguing the defense of duress during trial. The State’s motion was based solely upon the evidence it presumed the defendant would seek to admit regarding Dodge’s threats on the night of the robbery. The State argued that those threats were inadmissible because the defendant had “multiple alternatives at her disposal to avoid committing the criminal act.” The State argued that the defendant could not meet her burden of showing duress by a preponderance of the evidence, and that the court, therefore, should preclude all evidence of duress. The defendant objected to the motion, referencing not only the threats that Dodge made against her on the night of the robbery, but also referencing his prior threats and violence against her, including putting a knife to her throat. She asserted that such evidence entitled her to an instruction on the defense of duress.
The court addressed the State’s motion on the day the trial began. After hearing arguments from the parties, the court ruled that the defendant could introduce evidence regarding Dodge’s threats against her on the night of the robbery, including his threat to beat her “if she didn’t drive him to the Baymont for the robbery.” However, the court excluded evidence of *579 Dodge’s prior threats and acts of violence against the defendant, including the incident in which he held a knife to her throat. The court explained the basis for its decision as follows:
[A]s far as prior incidents, I think, my view of the case law is pretty clear. You can’t reach back and pick up things in the past. I mean, as a practical matter, this woman, if she was at some point previously threatened, could have left her companion and gone someplace else. So she stuck with him.
And the case law, the two cases we have in New Hampshire focus on the event itself. And that’s the testimony, if it comes in, that I would allow to come in, not the prior incidents.
The court deferred ruling on whether it would permit the jury to consider the duress defense until the close of the evidence, at which time it ruled that the evidence was sufficient to warrant an instruction on the defense. It, therefore, gave the following jury instruction:
The defendant has raised a common law defense of duress. Duress is defined as acting against [one’s] will under threat of serious bodily injury or death. The Defendant has the burden of proving, by a preponderance of the evidence, that the Defendant was purposely acting to facilitate the commission of the crime of robbery by threat of physical force under threat of imminent death or serious bodily injury.
Evidence that the Defendant may have felt some pressure or influence to act, to aid in the commission of the offense or emotionally was unhappy facilitating the commission of the crime, is not sufficient to prove duress. The defense of duress applies only when the Defendant is under an unlawful threat of imminent death or serious bodily injury which threat caused the Defendant to engage in conduct with which she is charged.
The jury found the defendant guilty of accomplice to robbery. This appeal followed.

II. Discussion

On appeal, the defendant argues that the trial court erred by excluding, as irrelevant, evidence of Dodge’s threatening and violent conduct against her before the night of the robbery. The defendant contends that evidence of Dodge’s prior threats and violence, including the incident during which he put a knife to her throat, was highly relevant to her duress defense. That evidence, she argues, tends to make it more likely that she reasonably *580 feared imminent death or serious bodily injury when Dodge threatened, on the night of the robbery, to beat her if she did not assist him. That evidence was probative, she concludes, “to explain why she followed [Dodge’s] command to drive him to the site of the robbery.” The State responds that the trial court properly excluded the evidence as irrelevant because the prior threats were not made close in time to the robbery. As noted above, the trial court ruled that only threats made on the night of the robbery were admissible; all threats and violent acts occurring prior to that time were ruled inadmissible.
Before addressing the parties’ arguments, we observe that although we have not yet recognized the common law duress defense, the State does not dispute that duress was a cognizable defense in this case. Nor does the State contend on appeal that the evidence was insufficient to justify the duress instruction. Furthermore, neither party challenges the trial court’s duress instruction. Accordingly, we have no occasion to decide those issues.
We review a trial court’s ruling admitting or excluding evidence for an unsustainable exercise of discretion. State v. White, 155 N.H. 119, 123 (2007). “To show an unsustainable exercise of discretion, the defendant must demonstrate that the trial court’s ruling was clearly untenable or unreasonable to the prejudice of his case.” State v. Furgal, 164 N.H. 430, 438 (2012) (quotation omitted).
Evidence is relevant it if has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” N.H. R. Ev. 401. Evidence that an individual has been the victim of past violent acts may be relevant to explain that individual’s present behavior. See State v. Beltran, 153 N.H. 643, 648 (2006) (evidence of defendant’s abuse of collaborator was admissible to explain collaborator’s submission to defendant’s demands surrounding the crime and her delay in reporting).
Here, the trial court’s relevancy determination was erroneous for two reasons. First, the trial court apparently concluded that the defendant’s decision to remain with Dodge obviated any relevance of the prior threats and violence. This was error. The defendant’s decision to remain with Dodge could have affected the weight the jury gave to the evidence, but should not have affected its admissibility. Second, the trial court also apparently concluded that the prior threats and violence were too remote in time to be relevant to a duress defense. This, too, was error. Dodge’s prior threats and violence were relevant to the duress defense because they tended to make it more probable that the defendant acted under a reasonable fear of imminent death or serious bodily injury than would have been the case without such evidence. Moreover, the trial court’s ruling was *581 “clearly untenable or unreasonable to the prejudice of [the defendant’s] case.” Furgal, 164 N.H. at 438. By excluding evidence that Dodge had previously threatened and been violent toward the defendant, including once putting a knife to her throat, the trial court deprived the jury of evidence necessary to its assessment of her duress defense. Thus, we conclude that the trial court erred when it found that evidence of Dodge’s prior threats and violence was irrelevant to the defendant’s duress defense.
The State urges us to affirm the trial court’s decision, nonetheless, because alternative grounds support it. See State v. Dion, 164 N.H. 544, 552 (2013) (“Where the trial court reaches the correct result on mistaken grounds, we will affirm if valid alternative grounds support the decision.” (quotation and brackets omitted)). For the first time on appeal, the State asserts that, to the extent the defendant sought to elicit evidence of Dodge’s prior threats and violence by cross-examining the police officers who interviewed her, such evidence constitutes inadmissible double hearsay. The first asserted level of hearsay is comprised of Dodge’s out-of-court statements and actions; the second asserted level of hearsay is comprised of the defendant’s out-of-court statements to the police relaying Dodge’s statements and actions. In this context, Dodge’s non-verbal conduct, such as the act of putting a knife to the defendant’s throat, could be considered to be hearsay because it was “intended by [him] as an assertion.” N.H. R. Ev. 801(a)(2). The defendant counters that Dodge’s out-of-court statements and actions are not hearsay because they were not offered for their truth. The defendant further responds that her statements to the police about what Dodge said and did are admissible under the doctrine of verbal completeness.
 “ ‘Hearsay’ is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” N.H. R. Ev. 801(c). We begin by addressing the first asserted level of hearsay — Dodge’s out-of-court statements and conduct. We agree with the defendant that evidence of what Dodge said and did does not constitute hearsay because that evidence was not offered for its truth. “If a statement is not offered to prove its truth, but is offered for some other reason, such as to prove simply that the statement was made, it is not hearsay.” State v. Sulloway, 166 N.H. 155, 163 (2014) (quotation omitted). Here, the defendant did not seek to offer Dodge’s threats or violence to prove the truth of any assertions he made; rather, such evidence was offered merely to provide a foundation for the reasonableness of the defendant’s fear at the time of the robbery. In short, the point of such evidence was not whether any of Dodge’s assertions were “true,” but merely that the threats or violence were perceived by the defendant.
*582 We next address the second asserted level of hearsay — the defendant’s statements to the police describing Dodge’s out-of-court statements and conduct. Defense counsel stated at oral argument that the defendant’s statements describing Dodge’s threats and violence were offered for their truth, and, therefore, fall squarely within the definition of hearsay. In light of that concession, we need not decide whether the defendant’s descriptions of Dodge’s prior threats and violence, in fact, constituted hearsay.
The defendant argues that her statements nonetheless were admissible under the doctrine of verbal completeness in light of other statements she made to the police as elicited by the State through the officers who interviewed her. The doctrine of verbal completeness is a common law rule recognized by this court, whereby “a party has the right to introduce the remainder of a writing, statement, correspondence, former testimony or conversation that his or her opponent introduced so far as it relates to the same subject matter and hence tends to explain or shed light on the meaning of the part already received.” State v. Lopez, 156 N.H. 416, 421 (2007) (quotation omitted); see also N.H. R. Ev. 106. The doctrine “exists to prevent one party from gaining an advantage by misleading the jury” Lopez, 156 N.H. at 421 (quotation omitted). “Thus, there are two requirements to trigger the doctrine respecting conversations: first, the statements must be part of the same conversation; and second, admission of only a portion would mislead the jury.” Id. (quotation omitted). The rule does not render evidence automatically admissible, though “otherwise inadmissible evidence may be admitted to prevent a party from gaining a misleading advantage.” State v. Warren, 143 N.H. 633, 636 (1999).
Here, the first requirement of the doctrine is met, as both the defendant’s inculpatory statements regarding her role in the robbery and her exculpatory statements regarding Dodge’s past threats and violence were made during her interviews with the police. The defendant argues that the second requirement of the doctrine also is met because “[permitting the State to inform the jury that [she] admitted to driving Dodge and Jones to the location of the robbery, while excluding her explanation of why she did so, clearly would have allowed the State to gain an advantage by misleading the jury.”
Our review of this issue is informed by the context in which it arises. Ordinarily, a decision by a trial court regarding the applicability of the verbal completeness doctrine is made after the parties have had the opportunity to address the issue, and the trial court has had the opportunity to exercise its discretion in light of all of the relevant circumstances. Such a decision is reviewed on appeal for an unsustainable exercise of discretion. See Lopez, 156 N.H. at 420-21. However, in this case, the trial *583 court never addressed the issue because it ruled before trial that Dodge’s prior threats and violence were irrelevant and, therefore, inadmissible.
Neither the trial court nor the parties discussed whether either Dodge’s prior threats and violence or the defendant’s out-of-court description of them constituted inadmissible hearsay. Nor was there any discussion about whether the defendant’s out-of-court description was admissible under the verbal completeness doctrine. Although in its brief, the State asserts that “the court expressed the opinion that the evidence [of prior threats and abuse] was ‘relevant, but it [was] also hearsay,’ ” the State has mischaracterized the record. When the court made that statement, it was discussing the admissibility of the defendant’s out-of-court description of Dodge’s general demeanor. Similarly, although the State contends that the trial court “explored” the hearsay objection later in the trial, the hearsay objection to which the State refers concerned Dodge’s statements on the night of the robbery. The objection was not to his prior threats and violence, nor was it to the defendant’s statements to the police describing them.
 Moreover, after the trial court ruled before trial that all evidence of Dodge’s prior threats and violence was inadmissible as irrelevant, there was no cause for the defendant to argue that the evidence was admissible under the verbal completeness doctrine. That doctrine requires that the evidence sought to be admitted be relevant to explain or shed light on previously admitted evidence. Id. at 421. Given that the court had already determined that the evidence was irrelevant, it would have been futile for the defendant to rely upon a doctrine that has relevancy as one of its requisites. When, as in this case, a discretionary decision is at issue and the trial court has not exercised that discretion, we may sustain the trial court’s ruling on a ground upon which it did not rely only if “there is only one way the trial court could have ruled as a matter of law.” Thomas v. United States, 59A.3d 1252, 1266 (D.C. 2013); see Wright v. United States, 508A.2d 915, 919-20 (D.C. 1986) (appellate court may affirm trial court that reached right result for wrong reason on a discretionary ruling only in rare case where trial court had but one option it could choose without abusing its discretion, so that appellate court can affirm as a matter of law).
Here, we cannot say, as a matter of law, that had the trial court addressed the issue and exercised its discretion, it would have found the evidence inadmissible under the verbal completeness doctrine. As the defendant argues in her reply brief, the court reasonably could have decided that permitting the State to inform the jury that the defendant admitted to the police to driving Dodge and Jones to the location of the *584 robbery, while excluding relevant evidence for why she did so, allowed the State to gain a misleading advantage.
Moreover, the record in this case indicates that had the trial court ruled that the evidence of prior threats and violent acts was relevant to the duress defense, the court might have admitted it under the completeness doctrine. During argument on the State’s motion in limine, after the court had ruled that the threats on the night of the robbery were relevant, the prosecutor stated:
Briefly, as we reiterated in chambers, the State understands and concedes that the statement attributed to Tyler Dodge by the Defendant, which is essentially the basis for her claim, is that he [would] beat [her]... if she didn’t drive him to the Baymont for the robbery. That statement, the State assumes, will come in because it was made during an interview with the police. And I think under the doctrine of completeness, both the inculpatory and any exculpatory statements would come in.
(Emphasis added.) The State’s argument on appeal that the defendant’s statements to the police constituted hearsay (when testified to by the police) applies not only to her statements regarding prior threats, but also to her statements regarding threats made on the night of the robbery. Yet, as the prosecutor recognized, the hearsay statements to the police regarding threats made on the night of the robbery were admissible under the doctrine of completeness, and the prosecutor expressed his opinion that under the doctrine of completeness, any exculpatory statements by the defendant to the police would be admitted. Had the trial court understood that the defendant’s statements to the police regarding the prior threats and violent acts were also relevant, exculpatory statements, it may well have admitted them under the same theory.
In summary, we are unable to conclude on the record before us that there was only one way that the trial court could have ruled had it been asked to decide whether the evidence of Dodge’s prior threats and violence was admissible under the completeness doctrine. Under those circumstances, we decline to affirm the conviction on the ground that the trial court reached the right result for the wrong reason.
 Finally, we briefly address the State’s contention that the trial court’s error was harmless. To establish that an error was harmless, the State must prove beyond a reasonable doubt that the error did not affect the verdict. State v. Souksamrane, 164 N.H. 425, 429 (2012). An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant’s guilt is of an overwhelming nature, quantity, or weight, and if *585 the evidence that was improperly admitted or excluded is merely cumulative or inconsequential in relation to the strength of the State’s evidence of guilt. Id. Here, the jury was instructed that the defendant bore the burden of proving, by a preponderance of the evidence, that she “was purposely acting to facilitate the commission of the crime of robbery by threat of physical force under threat of imminent death or serious bodily injury.” We agree with the defendant that the excluded evidence, particularly evidence that Dodge put a knife to her throat, was highly relevant to whether the defendant reasonably feared imminent death or serious bodily injury when Dodge threatened to beat her on the night of the robbery. Because of its nature, such evidence cannot be characterized as merely cumulative or inconsequential in relation to the strength of the State’s evidence of guilt. Had such evidence been admitted, it is possible that the jury would have credited the defendant’s duress defense. Because we are not persuaded beyond a reasonable doubt that the error did not affect the verdict, we reverse and remand.

Reversed and remanded.

Hicks, Conboy, and BASSETT, JJ., concurred; Lynn, J., dissented.