# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2014-0577, <u>George W. Lemay, Trustee of the Andrew C. Lemay and Marilyn C. Lemay Irrevocable Trust v. Steven Caldwell</u>, the court on July 17, 2015, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Steven Caldwell (tenant), appeals an order of the Circuit Court (<u>Boyle</u>, J.) granting the plaintiff, George W. Lemay, as Trustee of the Andrew C. Lemay and Marilyn C. Lemay Irrevocable Trust (landlord), a writ of possession. <u>See</u> RSA 540:2, II(d) (2007). The tenant contends that: (1) his "actions do not rise to the level of adversely affecting the health or safety of the other tenants"; and (2) the trial court erred by admitting hearsay testimony.

On appeal, we review sufficiency of the evidence claims as a matter of law and uphold the findings and rulings of the trial court unless they are lacking in evidentiary support or tainted by error of law. <u>Nashua Hous. Auth. v. Wilson</u>, 162 N.H. 358, 360 (2011). We view the evidence in the light most favorable to the plaintiff. <u>Id</u>. Legal conclusions, as well as the application of law to fact, are reviewed independently for plain error. <u>Miller v. Slania Enters.</u>, 150 N.H. 655, 659 (2004). Accordingly, our inquiry is to determine whether the evidence presented to the trial court reasonably supports its findings, and then whether the court's decision is consonant with applicable law. <u>Id</u>.

RSA 540:2, II(d) authorizes a landlord of restricted property to give a tenant written notice to quit when the tenant's behavior "adversely affects the health or safety of the other tenants." In this case, a resident of the apartment building, April Judson, complained to the landlord regarding the tenant's frequent and noisy arguments with his girlfriend. She testified that these fights were "very loud and very heated," that some of these fights took place outside the building, and that some woke her in the night. A second resident, Benjamin Nelson, testified that, when the tenant learned of such complaints, "he'd pace in the hallway and would start saying what he's going to do if he'd find out who called the landlord . . . and he'd start punching his fist and [saying] I'm going to get that person and he'd be throwing his middle finger in the air." Nelson testified that, even though the tenant's statements were not directed at him, the tenant's "rages . . . were upsetting to listen to."

Judson testified that the first time she complained to the landlord, the tenant confronted her, he was "angry and agitated," and she "felt threatened and . . . didn't feel like [she] was safe." She testified that, after she complained another time, when she returned home from work, the tenant accosted her at the only door to the building and barred her entrance with his arms while confronting her verbally about her complaint. She testified that the tenant appeared angry, that it took her approximately five minutes to get past him, and that she felt unsafe. Judson testified that she avoided coming home by sleeping at her parents' house or a friend's house. Nelson testified that he would arrange to meet Judson in the building's parking lot after work so they could enter the building together because she was afraid of the tenant.

Nelson agreed that his medical condition could be aggravated by anxiety and stress. He testified that his condition was affected by the tenant's loud fights and that it was "very stressful to live under [the] kind of turmoil" caused by the tenant's treatment of Judson. Judson testified that she was afraid of the tenant, that she felt threatened and unsafe, that the situation was "full of stress and it really did make [her] anxious and [she] didn't know what was going to happen next." Furthermore, she testified that it was "a very unhealthy living environment."

The tenant argues that he "suffers from mental disabilities, which cause his gestures, voice and other visible appearance characteristics to be unusual and [sic] can be misperceived as anger." He argues further that "[u]nfounded, unjustifiable, and voluntary ignorance giving rise to a fear[ ] cannot be endorsed as sufficient grounds to expel an afflicted person who has peacefully lived in his home for 15 years." We note that the agencies by whom Judson testified she was employed serve individuals with intellectual and developmental disabilities. We conclude that the evidence supports the trial court's implicit conclusion that the expressed concerns were based upon more than a misperception of the tenant's disabilities.

The tenant argues that the landlord conceded in his brief that his loud disputes with his girlfriend "were not the grounds for eviction." However, the portion of the eviction notice describing the reasons for the eviction begins with a description of these disputes and both Judson and Nelson testified about them.

The tenant argues that the testifying tenants did not testify "that they believed [he] would cause any of them harm, nor did they allege that [he] had caused any adverse affect [sic] on their health." He notes that they did not call the police in response to his behavior. He further argues that "[s]imply feeling unsafe, due to [Judson's] misperception of [his] illness does not rise to the level of adversely affecting her health or safety." However, Nelson testified that the tenant's behavior aggravated his medical condition and that Judson was afraid of him. Judson testified that the tenant created an unhealthy living environment and that she felt threatened and unsafe as a result of his actions toward her.

2

We conclude that this evidence, when viewed in the light most favorable to the landlord, supports the trial court's findings that the tenant's behavior has "caused the other tenants fear and anxiety over an extended period of time" and that "[t]hese other tenants fear for their safety and dread going home in fear of being confronted by the [tenant]." See RSA 540:2, II(d). The tenant argues that "[t]he trial court did not find that [his] actions adversely affected the health or safety of the other tenants." However, we assume that the trial court made all findings necessary to support its decision. See Nordic Inn Condo. Owners' Assoc. v. Ventullo, 151 N.H. 571, 586 (2004). In light of this conclusion, we need not address the tenant's argument that the landlord should have proceeded under RSA 540:2, II(e) (2007).

We next address whether the trial court erred by admitting hearsay testimony when it allowed the landlord to testify regarding complaints he received from other tenants, including Judson and Nelson. We review a trial court's ruling admitting evidence for an unsustainable exercise of discretion. State v. Hayward, 166 N.H. 575, 580 (2014). To show an unsustainable exercise of discretion, the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. Id. "Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.H. R. Ev. 801(c). If a statement is not offered to prove its truth, but is offered for some other reason, such as to prove simply that the statement was made, it is not hearsay. Hayward, 166 N.H. at 581.

The landlord asserts that his testimony regarding complaints he received was not offered for its truth, but merely to show that he received notice of the tenant's behavior and to provide a foundation for his issuance of an eviction notice to the tenant. See id. The record establishes that Judson and Nelson testified directly as to their interactions with the tenant. The tenant does not explain how the landlord's testimony regarding the tenants' complaints prejudiced his case. Accordingly, we need not address the tenant's argument that the landlord's testimony did not come within the hearsay exception created by RSA 540:16-a (2007).

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,**
**Clerk**
