NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Rockingham
No. 2019-0608

THE STATE OF NEW HAMPSHIRE

v.

BRENNA CAVANAUGH

Argued: October 28, 2020
Opinion Issued: December 29, 2020

Gordon J. MacDonald, attorney general (Elizabeth C. Woodcock, assistant attorney general, on the brief and orally), for the State.

Law Office of Michael J. Zaino, PLLC, of Hampton (Michael J. Zaino on the brief and orally), for the defendant.

HICKS, J. The defendant, Brenna Cavanaugh, appeals her convictions by a jury of being an accomplice to attempted first degree assault, see RSA 629:1 (2016); RSA 631:1, I(b) (2016); RSA 626:8, II(c), III(a) (2016), and an accomplice to criminal mischief, see RSA 626:8, II(c), III(a); RSA 634:2, I (2016) (amended 2020), :2, II-a (2016). On appeal, she argues that the evidence was insufficient for the jury to have convicted her and that the Superior Court (Wageling, J.) erred by: (1) declining her request for a self-defense jury instruction; (2) precluding her from introducing extrinsic evidence of the victim's prior inconsistent statements; (3) allowing certain of the victim's statements into evidence under the excited utterance exception to the hearsay rule; and (4) denying her request to recall a witness. We reverse and remand.

I. Facts

The jury could have found the following facts.  In the very early morning hours of August 18, 2018, the defendant's teenaged daughter invited the victim, who was then sixteen years old, to a party.  The victim and the daughter were friends, and the victim believed that the party was at the defendant's house.

Although the victim lacked a driver's license, he took his father's truck without permission and drove it to the defendant's home.  He parked the truck across the street, approximately five feet in front of a telephone pole.  He crossed the street and entered the defendant's home through the unlocked front door.  Upon entering, he went up a staircase to the living room and discovered that there was no party and the defendant's daughter was nowhere to be found.  The victim whispered the daughter's name and, hearing no response, prepared to leave.  As he was doing so, he stepped on a creaky floorboard and heard a female voice state, "Someone's here."  In response, the victim quickly ran from the home and to his father's truck because he was scared.

Hearing the creaky floorboard, the defendant woke up and told her boyfriend that there was someone inside the house and to get his gun.  After hearing the front door shut, the defendant ran down two flights of stairs to chase after the victim.  Her boyfriend followed soon thereafter armed with a handgun.

Once outside, the defendant saw the victim inside the truck, which had its engine running and its lights on.  She crossed the street and stood approximately one foot away from the front of the truck so that she could see its license plate number.  As he prepared to drive away, the victim heard the defendant yell, "shoot, shoot" or "shoot him, shoot him."  He then heard a very loud noise and saw a puff of smoke.  Realizing that someone was shooting at him, the victim put the truck into reverse, striking the telephone pole.  He then put the truck in drive and maneuvered out of the parking space.  As the victim drove, he heard more gunshots.  He drove to a nearby gas station, promptly threw up, and drove home.

Officers involved in a traffic stop approximately 200 yards away from the defendant's home heard six gunshots.  After the defendant called 911 to report that there had been an intruder in her home and that her boyfriend had shot at the intruder's vehicle, the officers responded to her residence.  Meanwhile, the victim returned to the scene with some friends to speak with the officers about the incident.  It was later determined that the truck was damaged by three different bullets.  Two of the bullets left visible bullet holes.  There was also damage to the rear signal light on the truck's passenger side.

2

In November 2018, a grand jury indicted the defendant for being an accomplice to attempted first degree assault and criminal mischief. In April 2019, a grand jury indicted her for criminal solicitation to commit first degree assault and reckless conduct with a deadly weapon. The jury found her not guilty of the two criminal solicitation charges, but convicted her of the two charges of being an accomplice. This appeal followed.

## II. Sufficiency of the Evidence

We first consider the defendant's arguments that the evidence was insufficient to convict her of being an accomplice to attempted first degree assault and criminal mischief. A challenge to the sufficiency of the evidence raises a claim of legal error; therefore, our standard of review is de novo. State v. Folley, 172 N.H. 760, 766 (2020). When considering such a challenge, we objectively review the entire record, including any evidence presented by the defendant, to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences drawn therefrom in the light most favorable to the State. Id. The trier of fact may draw reasonable inferences from facts proved as well as from facts found as the result of other inferences, provided they can be reasonably drawn therefrom. State v. Saintil-Brown, 172 N.H. 110, 117 (2019). We examine each evidentiary item in the context of all the evidence, and not in isolation. Id. The defendant has the burden of demonstrating that the evidence was insufficient to prove guilt. Id.

### A. Accomplice to Attempted First Degree Assault

We first address the charge of accomplice to attempted first degree assault, which required the State to prove, beyond a reasonable doubt, that the defendant, acting with the purpose that the crime of first degree assault be committed, and acting in concert with or aiding her boyfriend, caused "six bullets to be discharged by means of a deadly weapon, a firearm, in the direction of [the victim]," which "under the circumstances that [she] believed them to be constituted a substantial step towards the commission of the crime" of first degree assault. See RSA 626:8, III(a) (defining elements of accomplice liability); RSA 629:1, I (defining an attempt to commit a crime); RSA 631:1, I(b) (defining first degree assault by means of a deadly weapon).

The defendant asserts that the State failed to produce any direct evidence showing that her actions aided her boyfriend in causing six bullets to be discharged from his firearm. She further argues that the circumstantial evidence introduced by the State was insufficient because "an alternative reasonable conclusion consistent with innocence exists." See Saintil-Brown, 172 N.H. at 117 (discussing the defendant's burden when the evidence as to one or more elements of an offense is solely circumstantial). The defendant

3

contends that her boyfriend "could have discharged the firearm for any number of reasons, none of which were impacted by [her] actions."

We agree with the State that the evidence on this element was not solely circumstantial, but rather included both direct and circumstantial evidence. See id. at 117-18. "Direct evidence is evidence which, if accepted as true, directly proves the fact for which it is offered, without the need for the factfinder to draw any inferences." State v. Kelley, 159 N.H. 449, 454 (2009) (quotation omitted). Direct evidence includes "the testimony of a person who claims to have personal knowledge of facts about the crime charged such as an eyewitness." Id. (quotation omitted). In this case, the defendant's testimony regarding her actions and her observations of her boyfriend's actions constitutes direct evidence. When, as here, the proof involves both direct and circumstantial evidence, a sufficiency challenge must fail if the evidence, including the jury's credibility determinations, is such that a rational trier of fact could find guilt beyond a reasonable doubt, even if the evidence would support a rational conclusion other than guilt if the jury had resolved credibility issues differently. Saintil-Brown, 172 N.H. at 117-18.

Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the State, we conclude that it was sufficient for a rational trier of fact to have found, beyond a reasonable doubt, that the defendant acted in concert with or aided her boyfriend in causing six bullets to be discharged from his firearm. The jury heard evidence that the defendant's boyfriend grabbed his gun after she told him to do so. As well, the jury heard evidence that the defendant chased after the victim after she heard him leave the house, and that her boyfriend followed soon thereafter. The jury also heard evidence that after the defendant yelled at her boyfriend to "shoot," the victim heard a very loud noise, saw a puff of smoke, and realized that someone was shooting at him. The jury heard the defendant's 911 call to the police in which she identified her boyfriend as the only person who fired a gun during the incident, as well as her police interview in which she said that her boyfriend fired approximately four rounds of ammunition "towards the [victim's] tire area." In addition, a police officer who responded to the scene testified that the victim's boyfriend identified himself as the shooter. Six shell casings were found on the ground near the telephone pole into which the victim had driven the truck. From this evidence and the reasonable inferences therefrom, viewed in the light most favorable to the State, a rational trier of fact could have found, beyond a reasonable doubt, that the defendant acted in concert with or aided her boyfriend in causing six bullets to be fired from his firearm.

B. Accomplice to Criminal Mischief

We next address the accomplice to criminal mischief charge, which required the State to prove, beyond a reasonable doubt, that the defendant, acting with the purpose that the crime of criminal mischief be committed, in

4

concert with or aiding her boyfriend, and "having no right to do [so] or any reasonable basis for belief of having such a right[,] purposely caused pecuniary loss in excess of 100 dollars" by "causing bullets to be [discharged] by means of a firearm at a vehicle occupied by [the victim]." See RSA 626:8, III(a) (defining elements of accomplice liability); RSA 634:2, I, II-a (defining criminal mischief).

The defendant contends that to prove pecuniary loss over $100, the State had to provide evidence "as to what it would cost to repair the damage to the truck," such as a repair estimate. The defendant asserts that it was insufficient for the State to "produce evidence that the vehicle was damaged" because "such evidence does not prove pecuniary loss."

To the contrary, the State could prove that the damage to the truck caused pecuniary loss of more than $100 through circumstantial evidence. "When the State must prove the value of property in order to bring a crime within the ambit of a particular criminal statute, any evidence from which the trier of fact can reasonably infer value is admissible." State v. Paris, 137 N.H. 322, 327 (1993) (quotation omitted). Such evidence "need not be infallible." Id.

To the extent that the defendant argues that there was insufficient evidence from which a rational trier of fact could have inferred that the damage to the truck was more than $100, we disagree. Here, in addition to testimony describing the damage to the truck, the jury was afforded a view of the damaged truck and was shown photographs of it. Although the photographs have not been provided as part of the appellate record, viewing the trial testimony in the light most favorable to the State, we conclude that it was sufficient for a rational trier of fact to have inferred that the truck sustained more than $100 in damage. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004) ("It is the burden of the appealing party . . . to provide this court with a record sufficient to decide her issues on appeal . . . .").

III. Self-defense Instruction

We next consider the defendant's assertion that she was entitled to a self-defense jury instruction. We review the trial court's decision not to give a jury instruction for an unsustainable exercise of discretion. State v. Vassar, 154 N.H. 370, 373 (2006). A trial court must grant a defendant's requested jury instruction on a specific defense if there is "some evidence" to support a rational finding in favor of it. See State v. Chen, 148 N.H. 565, 569 (2002). "Some evidence" requires more than a minutia or scintilla of evidence. State v. Soto, 162 N.H. 708, 713 (2011). "[O]ur function in reviewing the trial court's refusal to provide a requested self-defense instruction is to search the record for evidence supporting the defendant's request." State v. McMinn, 141 N.H. 636, 646 (1997) (quotation and brackets omitted).

Self-defense is a pure defense under New Hampshire law.  State v. Munroe, 173 N.H. ___, ___ (decided August 4, 2020) (slip op. at 3); see RSA 627:1 (2016).  Thus, when evidence of self-defense is admitted, conduct negating the defense becomes an element of the charged offense that the State must prove beyond a reasonable doubt.  State v. Etienne, 163 N.H. 57, 80-81 (2011); see RSA 626:7, I(a) (2016).

RSA 627:4, II(a) provides that "[a] person is justified in using deadly force upon another person when he reasonably believes that such other person . . . [i]s about to use unlawful, deadly force against the actor or a third person." RSA 627:4, II(a) (2016).  Under RSA 627:4, III(a), a person is not justified in using deadly force to defend against deadly force by another "if he or she knows that he or she . . . can, with complete safety . . . [r]etreat from the encounter, except that he or she is not required to retreat if he or she is within his or her dwelling, its curtilage, or anywhere he or she has a right to be, and was not the initial aggressor."  RSA 627:4, III(a) (2016).  Nor is a person justified in using deadly force "when, with the purpose of causing death or serious bodily harm, the person has provoked the use of force against himself or herself in the same encounter."  RSA 627:4, III(c) (2016).

Before trial, the defendant filed a notice of self-defense, asserting that "the actions of the alleged victim in this matter placed [her] in a position where she reasonably believed that [he] was about to use unlawful deadly force against her or another."  The introductory paragraph of the notice referred to the two criminal solicitation charges, but did not refer to the two charges of being an accomplice.  After the State rested, but before the defendant testified, the court denied the request, finding that she was not entitled to the instruction because, once the victim ran from her home, she and her boyfriend provoked any use of force against them.  See RSA 627:4, III(c).

Before proceeding to the merits of the defendant's appellate arguments on this issue, we briefly address the State's contention that she waived her right to a self-defense instruction for the two charges of being an accomplice because the introductory paragraph of her notice of defense mentioned only the criminal solicitation charges.  The State asserts that "[a]lthough the defense is not required to allege facts in support of a claim of self-defense, the defendant in this case elected not only to give notice of self-defense, but to select the charges to which the notice applied."  (Citation omitted.)  The State argues that because the defendant referred only to the criminal solicitation charges in the introductory paragraph of her notice, "the claim with respect to the charges of conviction is waived."  The State contends that the trial court "was simply never asked" to give a self-defense instruction for the two charges of being an accomplice.

Assuming without deciding that a defendant waives her right to a self-defense instruction by referring to some, but not all, of the charges she faces in

6

the introductory paragraph of her notice of defense, we conclude that there was no such waiver here. As the defendant correctly observes, the four charges "represent alternative legal theories covering the same facts." Moreover, as evidenced by the trial court pleadings submitted as part of the appellate record, it appears that there was some confusion as to whether the criminal solicitation charges, brought nearly six months after the accomplice charges, were originally intended to replace the accomplice charges. Under these circumstances, we conclude that the defendant did not waive her right to a self-defense instruction merely because the introductory paragraph of her notice did not mention the two charges of being an accomplice.

We now consider the defendant's appellate arguments on the self-defense jury instruction issue. In effect, the defendant contends that the trial court unsustainably exercised its discretion because it decided the merits of her self-defense claim instead of determining whether there was more than a scintilla of evidence to support it. We agree. Although the evidence was conflicting, we conclude that there was more than a scintilla to support the defendant's assertion that she acted in self-defense.

The defendant told the police that at around 3:00 in the morning on the day in question, upon hearing a stair creak, she woke up to see an unknown man in her home. She described him as a white male between the ages of 16 and 30 whom she had never seen before. The defendant woke up her boyfriend, telling him that an intruder was in the home.

The defendant heard the man descend the stairs. He was not running quickly, she said. Although she heard the front door close, she did not see the man leave her home and worried that he might still be there.

As the defendant descended the stairs, she told her boyfriend to get his gun because she was "afraid" that the intruder "was going to hurt" them. The defendant noticed that the door to her daughter's bedroom was open, which was unusual, because her daughter was at a friend's house and, when her daughter is not home, her bedroom door is closed. As soon as she emerged from her house, the defendant saw the man sitting in his truck across the street; the truck's engine was running and its lights were on. The truck was approximately three car lengths in front of a telephone pole.

The defendant approached the truck in order to memorize its license plate number. As she was doing this, she saw her boyfriend in her peripheral vision, standing in the middle of the street. The defendant said that, at this point, the man threw the truck into reverse and, "at a high rate of speed," "smashe[d]" into the telephone pole. The man then "rev[ved]" the engine and accelerated forward "at a high rate of speed" towards her and her boyfriend. The defendant jumped out of the way, thinking that the man was "gonna try to run" her and her boyfriend over. When she heard the truck's engine "rev," she

thought, "This guy's going to hit us because he wants to get away." As the man drove away, she and her boyfriend began yelling, "Stop!" The defendant then heard her boyfriend discharge his weapon. As the man fled, the defendant called 911 to report the incident. When the police arrived, she asked them to "clear the house" because she was still afraid.

The defendant's statements to the police constitute more than a scintilla of evidence that, when she told her boyfriend to shoot the victim, she reasonably believed that the victim was about to use unlawful, deadly force against her, therefore entitling her to a self-defense instruction. See RSA 627:4, II(a), :9, II (2016) (defining "deadly force" to mean "any assault . . . which the actor commits with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily injury"); cf. State v. Hull, 149 N.H. 706, 715 (2003) (upholding jury's finding that the defendant's truck, in the manner in which it was used, was known to be capable of causing death or serious bodily injury).

Had the instruction been given, it would have been for the jury to decide whether the State had disproved the defendant's defense of self-defense. See Etienne, 163 N.H. at 80-81; see also State v. Soucy, 139 N.H. 349, 352-53 (1995). The State could have done so, by proving, beyond a reasonable doubt that her belief was unreasonable, see RSA 627:4, II(a), or that she had a duty to retreat, see RSA 627:4, III(a), or that she provoked the use of force against her, see RSA 627:4, III(c). To be entitled to the instruction, the defendant had only to demonstrate that there was "some evidence" to support it. Chen, 148 N.H. at 569. She did not need to submit proof beyond a reasonable doubt that she acted in self-defense.

The State urges us to uphold the trial court's decision, nonetheless, because alternative grounds support it. See State v. Dion, 164 N.H. 544, 552 (2013) ("Where the trial court reaches the correct result on mistaken grounds, we will affirm if valid alternative grounds support the decision." (quotation and brackets omitted)). For the first time on appeal, the State contends that the defendant was not entitled to the instruction because she failed to "admit [the] basis for the charges, i.e., that she directed [her boyfriend] to shoot at the terrified and fleeing victim." The State observes that, in criminal cases, we distinguish between theories of defense and theories of the case. See State v. Noucas, 165 N.H. 146, 155 (2013). "A theory of defense is akin to a civil plea of confession and avoidance, by which the defendant admits the substance of the allegation but points to facts that excuse, exonerate, or justify his actions such that he thereby escapes liability." Id. (quotations omitted). "By contrast, a theory of the case is simply the defendant's position on how the evidence should be evaluated and interpreted." Id. (quotations omitted). A trial court must instruct a jury on a theory of defense, but need not instruct a jury on a defendant's theory of the case. Id.

8

The State argues that, because the defendant testified that she did not tell her boyfriend to shoot the victim, her self-defense claim is not a theory of defense, but is merely a theory of the case. Thus, the State asserts, she was not entitled to the instruction she sought. See id. at 156 (concluding that the trial court did not err in failing to instruct the jury on self-defense where the defendant failed to admit to any of the facts in the indictment).

For the purposes of discussion, we assume without deciding that, as the State contends, the defendant failed to admit the substance of the charges against her. In such a case, the trial court had the discretion, but was not required, to give the requested instruction. See id. at 154-55; see also State v. Bruneau, 131 N.H. 104, 117-18 (1988).

"When, as in this case, a discretionary decision is at issue and the trial court has not exercised that discretion, we may sustain the trial court's ruling on a ground upon which it did not rely only if there is only one way the trial court could have ruled as a matter of law." State v. Hayward, 166 N.H. 575, 583 (2014) (quotation omitted); see Wright v. United States, 508 A.2d 915, 919-20 (D.C. 1986) (explaining that an appellate court may affirm a trial court that reached the right result for the wrong reason on a discretionary ruling only in the rare case where the trial court had but one option it could choose without abusing its discretion, so that appellate court can affirm as a matter of law). On the facts of this case, we cannot say that denying the request for a self-defense instruction is the only way the trial court could have ruled as a matter of law. Under those circumstances, we decline to uphold the trial court's decision on the ground that it reached the right result for the wrong reason. See Hayward, 166 N.H. at 584.

IV. Evidentiary Rulings

The defendant has challenged three of the trial court's evidentiary rulings: (1) its decision not to allow her to impeach the victim with extrinsic evidence of statements he made to Officer Maloney, one of the responding officers; (2) its determination that the victim's statements to a different responding officer, Officer Pearl, were admissible under the excited utterance exception to the hearsay rule; and (3) its denial of her request to recall Maloney to the stand. We address issue (2) because it is likely to arise on remand. See Munroe, 173 N.H. at ___ (slip op. at 8). We decline to address issue (1) because the defendant has not demonstrated that she preserved it for our review, and we do not address issue (3) because it is unlikely to arise on remand.

We first discuss the defendant's failure to preserve her argument that the trial court unsustainably exercised its discretion when it declined to allow her to impeach the victim with extrinsic evidence of statements he made to Maloney. At trial, defense counsel informed the trial court that he had "five or six statements" by the victim that he wanted to introduce through Maloney to

9

impeach the victim's testimony. The State objected, noting that the victim had not denied making the statements at issue, but rather had testified that he did not remember making them. The State contended that "agreeing with Counsel, or specifically saying that he did not remember saying it, is not something that can later be impeached."

After an extensive discussion with counsel, the trial court ruled that it would allow defense counsel to impeach the victim's credibility through extrinsic evidence of the prior inconsistent statements, but that if counsel did so, the court would allow the State to introduce extrinsic evidence of the victim's prior consistent statements to rehabilitate him. Defense counsel stated that he was "generally inclined to accept [the court's] offer." After more discussion, defense counsel said: "I just want[] to state it, so I understand. My choices, in terms of attempting to impeach, are limited to statements the witness had the opportunity to explain or deny. [The State's] opportunity to rehabilitate is not limited in that way. [The State] can use any prior consistent statement?" The court responded that this was correct, to which defense counsel said, "Okay."

On appeal, the defendant argues that "the trial court should have allowed introduction of the [victim's] prior out of court statements at a minimum to impeach [him] without allowing the State to rehabilitate [him] with prior consistent statements." The State contends that the defendant did not preserve this argument for our review. We agree with the State.

Generally, we do not consider issues raised on appeal that were not presented to the trial court. State v. Batista-Silva, 171 N.H. 818, 822 (2019). This preservation requirement, expressed in both our case law and Supreme Court Rule 16(3)(b), reflects the general policy that trial forums should have an opportunity to rule on issues and to correct errors before they are presented to the appellate court. Id. The defendant, as the appealing party, bears the burden of demonstrating that she specifically raised the arguments articulated in her appellate brief before the trial court. Id.

The record submitted on appeal demonstrates that, as the State aptly contends, the defendant "acquiesced in the [trial] court's ruling" that she now challenges on appeal. Under these circumstances, the defendant has failed to preserve her appellate argument for our review, and we decline to consider its merits.

We now address whether the trial court unsustainably exercised its discretion when it admitted the victim's statements to Pearl as excited utterances. Pearl spoke to the victim briefly at the scene. He described the victim as "very disheveled, very upset, nervous." He said that the police "had to calm [the victim] down multiple times, because he was very shaken by whatever had happened." Pearl subsequently transported the victim to the

police station, where he gave him "a drink and some food." The victim "was very upset, intermittently crying, and his hands [were] shaking. At some point, [the victim's] voice was trembling." Pearl said that the victim's speech pattern was "[b]roken," meaning that he "had trouble finding words for what he was trying to say" and "sometimes he had trouble just talking about whatever had happened." Pearl did not ask the victim any questions, but rather just let him talk. Over an objection by defense counsel, Pearl testified that the victim told him "that [the victim] had gotten a text from one of his female friends, on his iPad, [who] lives [at a particular address], and he knew her."

Defense counsel objected on the ground that a foundation had not been laid to introduce this statement under the excited utterance exception to the hearsay rule. See N.H. R. Ev. 803(2). The trial court disagreed:

> I believe this is an excited utterance. I find that there's been an appropriate foundation laid that he -- all of this happened within short order. He's 17 years old. He's without parents. . . . [H]e threw up on the way from there, got home, within minutes texted a friend, . . . got picked up, [and was] brought directly back to the scene. The first officer testified that he was extremely nervous and upset during his interactions. And the witness who's currently testifying, Ofc. Pearl, interacted within short order after that. And I believe that based upon Ofc. Pearl's testimony and the prior descriptions of [the victim] when he was conversing with the police laid a foundation that all of the statements he's made thus far to the police would be excited utterances.

On appeal, the defendant argues that in so ruling, the trial court unsustainably exercised its discretion. She asserts that because the defendant had time to contrive, his statements to Pearl were not admissible under the excited utterance exception to the hearsay rule.

The excited utterance exception to the hearsay rule permits the admission of hearsay statements "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." N.H. R. Ev. 803(2). "To qualify as an excited utterance, the statement must be a spontaneous verbal reaction to some startling or shocking event, made at a time when the speaker was still in a state of nervous excitement produced by that event, and before he had time to contrive or misrepresent." State v. Gordon, 148 N.H. 710, 720 (2002) (quotation omitted). "The basis of the excited utterance exception rests with the spontaneity and impulsiveness of the statement; thus, the startling event does not have to be the actual crime itself, but rather may be a related occurrence that causes such a reaction." State v. Pepin, 156 N.H. 269, 274 (2007) (quotation omitted). We review a trial court's decision to admit evidence under our unsustainable exercise of discretion standard. Id. To meet this standard, the defendant must demonstrate that the

11

court's ruling was clearly untenable or unreasonable to the prejudice of her case.  Id.

Here, although the victim spoke with Pearl sometime after the shots were fired at the victim, the record supports the trial court's findings that he was still under the stress of that incident when he and Pearl spoke.  Under these circumstances, we uphold the trial court's determination that the victim's statements to Pearl were admissible under the excited utterance exception to the hearsay rule.

V.  Conclusion

In sum, although we have concluded that the evidence was sufficient to sustain the defendant's convictions, we reverse because the trial court erred by failing to give the jury a self-defense instruction and remand for a new trial.

Reversed and remanded.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.