NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Coos
Case No. 2023-0085
Citation: State v. Brooks, 2025 N.H. 12

THE STATE OF NEW HAMPSHIRE

v.

NICHOLAS H. BROOKS

Argued: October 16, 2024
Opinion Issued: February 28, 2025

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Audriana Mekula, assistant attorney general, on the brief and orally), for the State.

Thomas Barnard, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

BASSETT, J.

[¶1] The defendant, Nicholas H. Brooks, appeals his convictions, following a jury trial, on two counts of simple assault. See RSA 631:2-a (2016). He argues that the Superior Court (Bornstein, J.) erred when it declined to instruct the jury on the "special responsibilities" defense with respect to the

charges on which he was convicted.  See RSA 627:6, II(a) (2016) (amended 2022).  He also asserts that the trial court erred when it admitted certain testimony and excluded other testimony, erroneously defined a term in its self-defense jury instruction, and failed to disclose portions of the complainant's school records.  Because we agree with the defendant that the court's failure to give the special responsibilities instruction was error, we reverse his convictions and remand.

[¶2] The jury could have found the following facts.  On February 17, 2022, the defendant was working as a substitute educator in a high school classroom.[1]  The defendant noticed a student, the complainant, playing with a toy.  The defendant asked the complainant repeatedly to put the toy away and to give him the toy, but the complainant refused the defendant's requests.  During the exchange, the complainant swore at the defendant.  The defendant then said "you are coming to the office with me," and attempted to take the toy from the complainant's hand.  The defendant testified that, after he tried to take the toy, the complainant made a claw with his hand and lunged at the defendant's face such that he only "had a millisecond in order to react."  The defendant grabbed the complainant's sweatshirt collar, and pushed him against a wall.  Witness accounts differ as to whether the defendant said anything or what the defendant said after he tried to take the toy from the complainant; however, the jury saw video evidence of the final seconds of the incident in which the defendant orders the complainant to go to the office while the defendant appears to be grabbing the complainant's sweatshirt and pushing him against a wall.

[¶3] The defendant was charged with three counts of simple assault, one each for touching the complainant's hand, touching his sweatshirt, and pushing him against the wall, and one count of second-degree assault.  Prior to trial, the defendant filed two notices of defense stating that he intended to rely on the defense of self-defense pursuant to RSA 627:4 (2016) and the defense of physical force by persons with special responsibilities (special responsibilities defense) pursuant to RSA 627:6, II(a).  The defendant additionally moved to exclude opinion testimony from school or law enforcement personnel as to the reasonableness of the defendant's use of force and to compel the State to produce the complainant's school records for in camera review.  The trial court granted the defendant's motions to compel records, reviewed the records in camera, and disclosed one incident report regarding the complainant's behavior in 2022.

---

[1] There is disagreement regarding whether the defendant can properly be characterized as a substitute teacher rather than a substitute paraeducator.  We need not resolve this issue because the State conceded that the defendant was a person "entrusted with the care or supervision of a minor," and for the purposes of this appeal we refer to the defendant as a substitute educator.  See RSA 627:6, II(a) (2016) (amended 2022).

[¶4] During trial, the State represented to the trial court that it was "not looking to elicit any testimony about specific school policies," or testimony from the educators who were present in the classroom "on what they would have done [in the] situation," or whether they would have intervened, but that it would elicit testimony from the educators who were present in the room regarding whether the complainant was creating a disturbance. The trial court ruled that the State could elicit such testimony from the educators and that the testimony was admissible under New Hampshire Rule of Evidence 701. See N.H. R. Ev. 701 (governing opinion testimony by lay witnesses).

[¶5] The complainant, the defendant, and several other witnesses testified at trial. Over the defendant's objection, the trial court allowed educators at the school to testify about their expectations for substitute teachers and the school's policies and procedures. Additionally, the trial court excluded as hearsay a student's statement regarding the effect of the complainant's behavior on the learning environment.

[¶6] After the close of evidence, the trial court heard arguments on the defendant's request for a jury instruction on the special responsibilities defense for all of the charges. The court granted the defendant's request as to the "first charged act, grabbing the [complainant's] hand," but denied it for the remaining charges. The trial court additionally granted the defendant's request for a self-defense jury instruction as to all of the charges except the first simple assault charge, grabbing the complainant's hand.

[¶7] The jury acquitted the defendant of the second-degree assault charge and the first simple assault charge, but convicted him of the second and third simple assault charges — the charges without a special responsibilities defense instruction. This appeal followed.

[¶8] The defendant first argues that the trial court erred when it denied his request for a special responsibilities defense instruction for the charges on which he was convicted. As a threshold matter, the parties disagree as to the proper standard of review. The State asserts that we owe deference to the trial court's determination that there was not "some evidence" to support a rational finding that the defendant was acting as a person with special responsibilities with regard to the charges on which he was convicted. The State reasons that the trial court's determination regarding whether there was "some evidence" to support the instruction required the trial court "to weigh the quantity and quality of the evidence" and should therefore be reviewed for an unsustainable exercise of discretion. To support its argument, the State points to State v. Chen, 148 N.H. 565, 569 (2002), and its progeny, in which we employed our unsustainable exercise of discretion standard when reviewing the trial court's decision not to give a jury instruction. The defendant counters that our standard of review in Chen grew out of a mistaken reliance on inapposite caselaw, and that we should "reaffirm the principle, clear before Chen, that the

standard of review depends on the nature of the denied instruction, and that the denial of an instruction on [a] defendant's theory of defense is reviewed de novo." We agree with the defendant.

[¶9] We have long distinguished between a criminal defendant's "theory of defense" and his "theory of the case." See, e.g., State v. Woodburn, 175 N.H. 645, 649 (2023). A "theory of the case" is simply the defendant's position on how the evidence should be evaluated and interpreted. Id. "By contrast, a 'theory of defense' is akin to a civil plea of confession and avoidance, by which the defendant admits the substance of the allegation but points to facts that excuse, exonerate, or justify his actions such that he thereby escapes liability." Id.; see also State v. Leaf, 137 N.H. 97, 97 (1993) (noting that RSA 627:6 defenses are justification defenses). A trial court must instruct a jury on a theory of defense, such as the special responsibilities defense, if there is "some evidence" to support a rational finding in favor of it, but need not instruct a jury on a defendant's theory of the case. See Woodburn, 175 N.H. at 649, 651. This distinction between a theory of the case and theory of defense appears to be the root of our erroneous application of the unsustainable exercise of discretion standard in Chen. See Chen, 148 N.H. at 569.

[¶10] Prior to Chen, in cases in which there was "some evidence" to support a defendant's theory of defense, we held that a failure to give such an instruction required automatic reversal of a conviction. See, e.g., State v. McMinn, 141 N.H. 636, 644-46, 647 (1997) (explaining that "our function in reviewing the trial court's refusal to provide a requested [theory of] defense instruction is to search the record for evidence supporting the defendant's request," holding that defendant was entitled to self-defense instruction, and reversing conviction on relevant charge (quotation and brackets omitted)). This standard of review is in contrast to our unsustainable exercise of discretion standard, which requires a defendant to show that the defendant was prejudiced by the error to warrant a reversal of a conviction. See State v. Cavanaugh, 174 N.H. 1, 14 (2020). Accordingly, before Chen, we in effect employed a de novo standard to review a trial court's failure to give a jury instruction on a defendant's theory of defense. See McMinn, 141 N.H. at 644-47.

[¶11] In Chen, we departed from our customary de novo standard without explanation or clarification and applied our unsustainable exercise of discretion standard when reviewing a defendant's request for a jury instruction on his theory of defense. See Chen, 148 N.H. at 569. Rather than relying on McMinn or other relevant precedent, we relied on State v. Laurent, 144 N.H. 517, 522 (1999), which involved a defendant's requested instruction on his theory of the case. See Chen, 148 N.H. at 569; Laurent, 144 N.H. at 522 (applying unsustainable exercise of discretion standard to trial court's refusal to provide missing evidence instruction regarding evidence that the defendant did not argue was exculpatory). This reliance on inapposite caselaw in Chen

4

caused our deviation from our customary de novo standard and led to application of our unsustainable exercise of discretion standard in subsequent cases in which a defendant sought review of the trial court's denial of a theory of defense jury instruction. See, e.g., Cavanaugh, 174 N.H. at 7 (reviewing trial court's denial of self-defense jury instruction for an unsustainable exercise of discretion).

[¶12]  Like self-defense, the special responsibilities defense is a pure defense. See State v. Etienne, 163 N.H. 57, 81 (2011) (noting that justification defenses under RSA chapter 627 are pure defenses). When a defendant asserts a pure defense, and there is evidence to support the defense, negating such a defense becomes an element of the offense that the State must prove beyond a reasonable doubt. Id. We have held that an erroneous jury instruction relieving the State of its burden to prove an element of the charged offense constitutes structural error, id. at 80, and that structural errors require automatic reversal of a defendant's conviction. See State v. Kousounadis, 159 N.H. 413, 429 (2009) ("[A] jury instruction that omits an element of the offense charged is an error that partially or completely denies a defendant the right to the basic trial process, and thus is not subject to harmless error analysis." (quotation, citations, and brackets omitted)). Therefore, it follows logically that when there is some evidence to support a pure defense, a trial court's failure to give a jury instruction on that defense is akin to failing to instruct on an element of the offense, and such error is not owed deference and warrants automatic reversal of a conviction without a showing of prejudice. Cf. id. at 429 ("The failure to instruct the jury on one element of a crime is thus indistinguishable from a directed verdict, and deprives a defendant of his right to a jury trial. . . . [E]ven convictions reflecting the 'right' result are reversed for the sake of protecting [that] basic right." (quotation and citations omitted)). Accordingly, consistent with our pre-Chen cases, we clarify that the correct standard for our review of a trial court's denial of a defendant's request for a jury instruction on a defendant's theory of defense is de novo.

[¶13]  Having clarified our standard, we turn to the merits of the defendant's argument. The defendant argues that there was "some evidence" to support a rational finding that he was acting as a person with special responsibilities with regard to the simple assault charges on which he was convicted. The State counters that the trial court correctly determined, based on the defendant's testimony, that there was "some evidence" in the record to support only a special responsibilities instruction with regard to the first simple assault charge, grabbing the complainant's hand. We agree with the defendant.

[¶14]  For there to be "some evidence" to support a defendant's specific defense, there must be more than a minutia or scintilla of evidence. See Woodburn, 175 N.H. at 651. The evidentiary support need not be overwhelming. Id. Our function in reviewing the trial court's refusal to provide

5

a requested pure defense instruction is to search the record for evidence supporting the defendant's request.  Id.

[¶15]  The version of RSA 627:6, II(a) in effect on the date of the incident provided that:

> A teacher or person otherwise entrusted with the care or supervision of a minor for special purposes is justified on the premises in using necessary force against any such minor, when the minor creates a disturbance, or refuses to leave the premises or when it is necessary for the maintenance of discipline.

RSA 627:6, II(a) (2016) (amended 2022).  Accordingly, we review the record for evidence that the complainant was creating a disturbance or refusing to leave the premises, or that the defendant's use of force was necessary for the maintenance of discipline.

[¶16]  The trial court based its ruling primarily on the defendant's testimony that he acted in self-defense after he grabbed the complainant's hand.  The trial court stated that "once [the defendant] grabbed [the complainant's] hand, . . . all steps [the defendant] took thereafter were in self-defense.  Not to enforce discipline.  Not to deal with a disturbance."  The trial court reasoned "[t]hat the Defense instructions need to dovetail with the Defendant's own testimony, not what somebody else might have said" and that the other witnesses' testimony did not matter.  This was error.  The "some evidence" standard can be satisfied by evidence in the record other than the defendant's testimony.  See, e.g, McMinn, 141 N.H. at 645-47 (concluding "some evidence" standard was satisfied by testimony of witnesses other than the defendant).  To meet the threshold, it was not necessary for the defendant to testify regarding his thought process at the exact moment of the charged conduct.  Woodburn, 175 N.H. at 652.

[¶17]  In this case, the jury could have reasonably inferred, with regard to all of the charges, that the defendant was acting as a person with special responsibilities to quell a disturbance, remove the complainant from the premises, or maintain classroom discipline.  The charged conduct occurred over the course of seconds.  The defendant and a student testified that the complainant was causing a disturbance by throwing a toy back and forth to other students during class.  Multiple witnesses testified that the defendant asked for the toy or told the complainant to put the toy away and that the complainant refused to give it to him and directed profanity at the defendant.  The defendant testified that he approached the complainant and said "we're going to the office," the complainant swore at him, and then the defendant reached for the toy, touching the complainant's hand in the process.  One of the educators testified that the defendant said "you're coming with me to the office," both before and after he touched the complainant's hand and that the

6

complainant verbally and physically resisted the defendant's request.  In addition to the defendant and the educator's testimony, in one of the video exhibits the defendant audibly tells the complainant to go to the office while holding the complainant's sweatshirt and pushing him against the wall.

[¶18]  Considering how rapidly the events took place and the evidence presented at trial, we disagree with the trial court that, as a matter of law, there was some evidence that the defendant used necessary force against the complainant only with regard to the first charged act, grabbing the complainant's hand.  See McMinn, 141 N.H. at 647.  There was evidence before the jury that the defendant was acting as a person with special responsibilities throughout the incident when he attempted to remove a disruptive and non-compliant student from the classroom and take him to a school administrator's office.  We therefore conclude that, because the record contains "some evidence" supporting a rational finding that the defendant acted as a person with special responsibilities with regard to the charges on which he was convicted, the trial court's refusal to instruct the jury on that theory of defense was error.  Accordingly, we reverse the defendant's simple assault convictions.

[¶19]  Given that we are reversing the defendant's convictions, we need not address the defendant's remaining arguments.  However, because several of the issues may arise on remand, in the interest of judicial economy we elect to address them.  See id.

[¶20]  First, the defendant argues that the trial court erred when it admitted certain testimony from educators at the school regarding whether the defendant's behavior met their expectations for substitute teachers and what the school's policy, customs, and staff expectations were, and when it excluded the statement of a student.  The State counters that the trial court's evidentiary rulings were not erroneous.

[¶21]  The trial court has broad discretion to determine the admissibility of evidence, and we will not upset its ruling absent an unsustainable exercise of discretion.  State v. Reinholz, 169 N.H. 22, 28 (2016).  For the defendant to prevail under this standard, he must demonstrate that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case.  Id.

[¶22]  The defendant argues that the trial court erred when it permitted educators at the school to "testify to their personal 'expectations' of substitute teachers" because such testimony was irrelevant.  The State counters that this was admissible lay opinion testimony under New Hampshire Rule of Evidence 701.  We agree with the defendant.

7

[¶23] The trial court admitted this testimony because it found that the defendant's cross-examination of students "made it relevant."[2]  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." N.H. R. Ev. 401.  "Irrelevant evidence is not admissible." N.H. R. Ev. 402.  The facts of consequence here are whether the defendant was a person entrusted with the care or supervision of a minor for the purposes of RSA 627:6, II(a), whether the complainant was causing a disturbance or refusing to leave the premises, whether force was necessary for the maintenance of discipline, and whether the defendant's force was necessary. See RSA 627:6, II(a).  Because the educators' testimony as to whether the defendant's behavior met their expectations for substitute teachers has no bearing on whether the defendant was entitled to a special responsibilities instruction under the Criminal Code, see id., their testimony on this issue does not tend to make a fact of consequence more or less probable and is, therefore, inadmissible, N.H. R. Ev. 401-402.

[¶24] We next turn to the defendant's argument that the trial court erred when it excluded as hearsay the defendant's testimony about a pre-incident statement made in his presence by a student regarding the effect of the complainant's past behavior on the classroom learning environment.  At trial, the defendant argued that the student's statement was not being offered for the truth of the matter asserted, but rather for its effect on the defendant, which informed his decision to intervene on the day of the incident.  The trial court excluded the student's statement as hearsay because "it d[id]n't follow" New Hampshire Rule of Evidence 803(3).  See N.H. R. Ev. 803(3) (exception to the rule against hearsay for declarant's then-existing mental, emotional, or physical conditions).  However, a statement offered to show its effect on the witness, here the defendant, is not hearsay and need not come within an exception to the rule against hearsay.  See Reinholz, 169 N.H. at 29 ("A statement that is not offered to prove the truth of the matter asserted but to show its effect on the witness is not hearsay.").  Accordingly, it was error for the trial court to exclude the defendant's testimony about the student's statement.[3]

---

[2] The defendant argues, and the State agrees, that neither "opening the door" doctrine applies. Given that we do not know how the case may be retried, we need not address the issue of whether the trial court erred when it concluded that the defendant's cross-examination of the students opened the door for the educators' testimony regarding their personal expectations for substitute teachers.  However, we do address the issue of its basic relevance.

[3] The State additionally argues that the student's statement was offered for its truth because, if the statement was not true, it could not have had an effect on the defendant.  To the contrary, the student's statement did not need to be true to have had an effect on the listener.  See State v. Hayward, 166 N.H. 575, 581 (2014) (concluding that threats need not have been true to be admissible to show their effect on the defendant).

8

[¶25]  Finally, the defendant argues that the trial court may have erred when it refused to disclose portions of the complainant's school records.  The State counters that the defendant failed to "meet his burden of establishing on appeal that the trial court's decision to release some records and not others was reversible error or prejudiced his case at trial."  Given that we are reversing the simple assault convictions, our conclusion that the trial court should have given the special responsibilities instruction for all of the charges, and the fact that we cannot know the context in which the school records issue may arise on remand, we decline to address the issue.

[¶26]  In sum, we conclude that the trial court erred when it denied the defendant's request for a special responsibilities defense instruction on all of the charges.  We therefore reverse the defendant's simple assault convictions and remand for a new trial.

Reversed and remanded.

MACDONALD, C.J., and DONOVAN and COUNTWAY, JJ., concurred.