NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Rockingham
Case No. 2024-0396
Citation: State v. Allore, 2025 N.H. 33

THE STATE OF NEW HAMPSHIRE

v.

ROBERT F. ALLORE

Argued: April 15, 2025
Opinion Issued: July 30, 2025

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Sam M. Gonyea, assistant attorney general, on the brief, and Anthony J. Galdieri orally), for the State.

Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.

COUNTWAY, J.

[¶1] In this interlocutory appeal, the defendant, Robert F. Allore, seeks review of Superior Court orders (St. Hilaire, J., and Kennedy, J.) regarding whether an alleged victim's consent constitutes a defense under RSA 632-A:2, I(g)(1) (sexual assault by medical provider) and I(i) (sexual assault by surprise).

See Sup. Ct. R. 8; RSA 632-A:2, I(g)(1), I(i) (2016) (establishing two variants of aggravated felonious sexual assault (AFSA)); RSA 632-A:4, I(a) (2016).  The interlocutory appeal statement approved by the trial court sets forth three questions related to whether consent is a defense under RSA 632-A:2, I(g)(1) and I(i) and whether RSA 632-A:2, I(g)(1) is overbroad and vague in violation of the New Hampshire and United States Constitutions.  We answer all three questions in the negative, and remand to the trial court for further proceedings consistent with this opinion.

[¶2] We accept the statement of facts as presented in the interlocutory appeal statement and rely upon the record for additional facts as necessary.  See In the Matter of Liquidation of Home Ins. Co., 175 N.H. 363, 364 (2022).  The charges at issue in this case arose out of events alleged to have occurred while the defendant, a visiting nurse licensed in the State of New Hampshire, was providing care to the alleged victim.  The defendant was charged with two counts of AFSA, under RSA 632-A:2, I(g), and four counts of misdemeanor sexual assault (MSA), under RSA 632-A:4, I(a).  The MSA charges at issue in this appeal incorporated the circumstances identified in RSA 632-A:2, I(g)(1) and I(i).  See RSA 632-A:4, I(a) (a person is guilty of a class A misdemeanor when that person "subjects another person who is 13 years of age or older to sexual contact under any of the circumstances named in RSA 632-A:2").  It is undisputed that the alleged victim was over the age of 13 at the time of the alleged assaults.

[¶3] After the charges were filed, the defendant notified the court that he intended to assert a consent defense under RSA 626:6, I (2016) (setting forth when consent is a defense to a charged crime).  The State moved to preclude consent as a defense at trial.  Substantial pre-trial litigation ensued resulting in the trial court directing the parties to prepare an interlocutory appeal statement.  The defendant did so, and the trial court approved its transfer to this court.

[¶4] The questions presented in this interlocutory appeal are: (1) as a matter of statutory interpretation is consent a defense under RSA 632-A:2, I(g)(1); (2) is RSA 632-A:2, I(g)(1) unconstitutionally vague and overbroad, both on its face and as applied, in violation of Part I, Articles 15 and 22 of the New Hampshire Constitution and the First, Fifth, and Fourteenth Amendments to the United States Constitution; and (3) is consent an available defense under RSA 632-A:2, I(i).  We answer all three questions in the negative.

[¶5] Resolving the questions presented requires us to engage in statutory interpretation.  The interpretation of a statute presents a question of law, which we review de novo.  State v. Parr, 175 N.H. 52, 55 (2022).  In matters of statutory interpretation, the intent of the legislature is expressed in the words of the statute considered as a whole.  Id.  We first look to the language of the statute itself, and, if possible, construe that language according to its plain and

ordinary meaning.  Id.  Further, we interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language the legislature did not see fit to include.  Id.  Finally, we interpret statutes in the context of the overall statutory scheme and not in isolation.  Id.

[¶6] We first address the question of whether consent is a defense under RSA 632-A:2, I(g)(1).  RSA 632-A:2, I(g) provides that a person is guilty of AFSA if such person engages in sexual penetration with another person:

> (g) When the actor provides therapy, medical treatment or examination of the victim and in the course of that therapeutic or treating relationship or within one year of termination of that therapeutic or treating relationship:
>
> > (1) Acts in a manner or for purposes which are not professionally recognized as ethical or acceptable; or
> > (2) Uses this position as such provider to coerce the victim to submit.

RSA 632-A:2, I(g); see also RSA 632-A:4, I(a).  Accordingly, the elements of RSA 632-A:2, I(g)(1) that the State must prove beyond a reasonable doubt at trial are that: (1) the defendant provided medical treatment for the alleged victim; (2) the defendant sexually penetrated the alleged victim "in the course of" or "within one year of termination of" the treating relationship; and (3) such behavior was "not professionally recognized as ethical or acceptable."  RSA 632-A:2, I(g)(1).[1]  RSA 626:6, I, provides that:

> I. The consent of the victim to conduct constituting an offense is a defense if such consent negatives an element of the offense or precludes the harm sought to be prevented by the law defining the offense.

RSA 626:6, I.

[¶7] The defendant argues under both prongs of RSA 626:6, I, that the consent of an adult victim negates the "professionally recognized" element of RSA 632-A:2, I(g)(1) and that it precludes the harm sought to be prevented by RSA 632-A:2, I(g)(1).  We begin by addressing the defendant's arguments that consent negates the "professionally recognized" element.

[¶8] The defendant asserts that because RSA 632-A:2, I(g) does not define what is professionally recognized as "ethical or acceptable" behavior, then which professional standard applies and whether consent negates the

---

[1] For the misdemeanor variant, the State must prove that the defendant subjected the alleged victim to sexual contact and that she was 13 years of age or older.  RSA 632-A:4, I(a).  RSA 632-A:1 differentiates between "sexual contact" and "sexual penetration."  RSA 632-A-1, IV, V (2016 & Supp. 2024).

"professionally recognized" element are questions of fact for the factfinder to decide.  The defendant reasons, therefore, that he should be entitled "to elicit evidence [at trial] that consent, in whole or in part, defines the boundary between acceptable and unacceptable sexual relationships with patients."  The State counters that, as a matter of law, the Nurse Practice Act (NPA), RSA chapter 326-B, is the governing professional standard defining "ethical or acceptable" behavior for nurses in New Hampshire, and that the NPA prohibits even consensual sexual conduct between nurses and patients.  The State reasons, therefore, that consent does not negate an element of RSA 632-A:2, I(g)(1) and accordingly cannot be a defense to a charge that alleges or incorporates the elements of RSA 632-A:2, I(g)(1).  We agree with the State.

[¶9] RSA chapter 326-B regulates the nursing profession in the State of New Hampshire.  RSA 326-B:1 (2017) ("[T]he practice of nursing shall be regulated through the New Hampshire board of nursing, and such board shall have the power to enforce the provisions of this chapter.").  Therefore, RSA chapter 326-B provides the relevant professional standard for what is considered ethical or acceptable behavior for licensed nurses in the state and is the applicable professional standard for the purposes of RSA 632-A:2, I(g)(1).  Given that the defendant was a licensed nurse in the State of New Hampshire at the time the events giving rise to these charges are alleged to have occurred, his conduct is governed by RSA chapter 326-B.

[¶10] The defendant asserts that the NPA "contains no express exclusion for consensual sexual relations" because, although it prohibits sexual conduct between nurses and clients, it does not require the board of nursing to discipline a licensee for such conduct.  We disagree with this reading of the statute.  The NPA expressly states that "engaging in sexual conduct with a client, touching a client in a sexual manner, requesting or offering sexual favors or language or behaviors suggestive of the same" is misconduct for which "[t]he board [of nursing] may discipline a licensee."  RSA 326-B:37, II(m) (2017).  The plain language of RSA 326-B:37, II(m) makes sexual conduct with a client — whether it is consensual or non-consensual — professional misconduct.  What is left to the board's discretion is whether to discipline a licensee for sexual conduct with a client — not whether such conduct is professionally recognized as misconduct.  Accordingly, consent does not negate "an element of" RSA 632-A:2, I(g)(1).  See RSA 626:6, I.

[¶11] Nor are we persuaded by the defendant's argument that the NPA should not apply because it "expresses standards articulated by the government, not by the nursing profession" and because it was enacted two years after the legislature enacted the current form of RSA 632-A:2, I(g)(1).  "Professionally" is defined as "of, relating to, or characteristic of a profession." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/professionally (last visited July 29, 2025).  Given that the NPA regulates the nursing profession in New Hampshire, it is clearly

related to the nursing profession in the state and can provide the standard for what is professionally recognized as misconduct by the profession. Nor is the timing of the NPA's enactment dispositive. RSA 632-A:2, I(g)(1) was written broadly to apply to multiple professions and to allow for professional standards regarding what is considered ethical or acceptable to evolve over time.[2] Accordingly, professional standards, such as the NPA, that were enacted after the current version of RSA 632-A:2, I(g)(1) are a rational and predictable measure to evaluate whether conduct is ethical or acceptable.

[¶12] The defendant additionally argues that, as a matter of statutory interpretation, if the patient's consent is legally irrelevant under RSA 632-A:2, I(g)(1), there would be no reason to enact RSA 632-A:2 I(g)(2). We disagree. RSA 632-A:2, I(g)(2) prohibits therapists and medical treatment providers from using their "position as such [a] provider to coerce the victim to submit" to sexual penetration during the course of, or within one year of the termination of, the treating relationship. RSA 632-A:2, I(g)(2). This provision sweeps more broadly than RSA 632-A:2, I(g)(1) to include treatment relationships that may not have established ethical or professional standards or treatment relationships that may have ethical or professional standards that do not prohibit consensual sexual conduct between providers and patients. Accordingly, RSA 632-A:2 I(g)(2) is not superfluous. See State v. Duran, 158 N.H. 146, 155 (2008) ("[A]n interpretation that renders statutory language superfluous and irrelevant is not a proper interpretation.").

[¶13] We turn next to the defendant's arguments that a victim's consent precludes the harm sought to be prevented by RSA 632-A:2, I(g)(1). The defendant argues that the legislature did not intend to prevent sexual activity between consenting adults. Rather, the defendant contends that RSA 632-A:2, I(g)(1) was "aimed to criminalize acts of penetration or sexual contact that purport to be treatment, unless the treatment is professionally recognized as ethical or acceptable." He further argues that had the legislature intended to preclude consent as a defense to a charge arising under RSA 632-A:2, I(g)(1) it would have done so explicitly, as it did elsewhere in RSA 632-A:2. Given our conclusion that the NPA applies and, therefore, consensual sexual conduct between a nurse and a patient is not professionally recognized as ethical or acceptable, we need not address the defendant's arguments that a victim's consent precludes the harm sought to be prevented by RSA 632-A:2, I(g)(1). Nor need we address the defendant's argument that RSA 632-A:2, I(g)(1) is unconstitutionally vague. The defendant's vagueness challenge is premised on

---

[2] At oral argument, the defendant argued that the NPA should not apply because the legislature could have expressly incorporated it into RSA 632-A:2, I(g)(1) and it failed to do so. We are unpersuaded. Given that the plain language of RSA 632-A:2, I(g)(1) encompasses a wide range of professions, including professions other than nursing and professions that may not yet be regulated by a state statutory scheme, the legislature's failure to specifically reference the NPA or other specific professional standards is not dispositive.

a reading of RSA 632-A:2, I(g)(1), rejected above, in which there is no settled definition for what is "professionally recognized as ethical or acceptable."[3]  RSA 632-A:2, I(g)(1).

[¶14] Finally, we address whether consent is a defense under RSA 632-A:2, I(i).  RSA 632-A:2, I(i) provides that a person is guilty of AFSA:

> When the actor through concealment or by the element of surprise is able to cause sexual penetration with the victim before the victim has an adequate chance to flee or resist.

RSA 632-A:2, I(i).  A person is guilty of misdemeanor sexual assault under those circumstances if the alleged victim is 13 years of age or older and the person subjected the alleged victim to sexual contact.  RSA 632-A:4, I (a).  Only the misdemeanor variant is at issue here.  The defendant argues that because, unlike elsewhere in RSA 632-A:2, I, the legislature has not explicitly withdrawn consent as a defense to RSA 632-A:2, I(i), he may assert a consent defense at trial and that the court must admit evidence of consent in defense of the charge under RSA 632-A:2, I(i).  The State counters that although the defendant may be able to elicit evidence of the alleged victim's consent in advancing his theory of the case, "a legal defense of consent is not available because if the defendant admitted the substance of the State's allegations . . . then he would necessarily concede that the victim did not consent."  We agree, in part, with each party.

[¶15] We have long distinguished between a criminal defendant's theory of defense and his theory of the case.  See, e.g., State v. Brooks, 177 N.H. __, __ (2025), 2025 N.H. 12, ¶9.  A theory of the case is simply the defendant's position on how the evidence should be evaluated and interpreted.  Id.  By contrast, a theory of defense is akin to a civil plea of confession and avoidance, by which the defendant admits the substance of the allegation but points to facts that excuse, exonerate, or justify his actions such that he thereby escapes liability.  Id.  In other words, to use consent as a theory of defense, the defendant would have to present evidence showing a different legal significance for the facts alleged against him.  State v. Ramos, 149 N.H. 272, 274 (2003).  In contrast, to use consent as his theory of the case, the defendant need only present evidence of a different factual scenario than that presented by the State, and then argue how the facts and evidence should be evaluated or interpreted by the jury.  Id.

---

[3] Although the defendant additionally argued before the trial court that RSA 632-A:2, I(g)(1) was unconstitutionally overbroad and raised the question of overbreadth in the interlocutory appeal statement, he did not advance any overbreadth arguments on appeal.  Accordingly, we deem any overbreadth argument waived.  State v. Cooper, 168 N.H. 161, 171 (2015) ("[A]ny issues raised in the defendant's notice of appeal, but not briefed, are deemed waived.").

[¶16] Here, the defendant does not admit the substance of the allegation: that he was "able to cause" sexual contact with the alleged victim "through concealment or by the element of surprise . . . before the [alleged] victim ha[d] an adequate chance to flee or resist." RSA 632-A:2, I(i). Were he to do so, he would necessarily admit that the alleged victim had not consented to the charged act. In other words, had the alleged victim consented, the defendant would have been "able to cause" the sexual contact through consent rather than "through concealment or surprise." RSA 632-A:2, I(i). Rather, the defendant seeks to elicit evidence of the alleged victim's "consent to the sexual act charged under RSA 632-A:2, I(i)." Such evidence would present a contrasting set of facts to those the State must prove in order to convict the defendant under RSA 632-A:2, I(i). It would then be for the factfinder to evaluate the credibility of the evidence and decide which version of the facts to believe. See Ramos, 149 N.H. at 274.

[¶17] We have previously stated that the credibility of evidence "is not a 'defense' to a criminal charge, as that term is employed" in RSA 626:6. State v. Guaraldi, 124 N.H. 93, 97 (1983). That is because, if the factfinder determines that there is credible evidence that the alleged victim consented to the charged conduct, the State will not have proved beyond a reasonable doubt that a crime has occurred under RSA 632-A:2, I(i). See Ramos, 149 N.H. at 273-74. In other words, although lack of consent is not an element of RSA 632-A:2, I(i), and, therefore, consent cannot be a legal defense to a charge arising under RSA 632-A:2, I(i), if the factfinder concludes that the alleged "penetration occurred only through the defendant's concealment or by surprise, it necessarily would have to find the victim did not consent to such penetration." Id. (endorsing trial court reasoning to this effect). Accordingly, here, the defendant may not use the alleged victim's consent as a legal defense to the misdemeanor charge incorporating the circumstances of RSA 632-A:2, I(i). He may, however, elicit evidence of the alleged victim's consent to the sexual act at issue in that charge to support his theory of the case.[4]

[¶18] In sum, we answer all three questions in the negative: consent is not a defense to a charge arising under RSA 632-A:2, I(g)(1) or I(i) and RSA 632-A:2, I(g)(1) is not unconstitutionally vague. We remand for further proceedings consistent with this opinion.

Remanded.

MACDONALD, C.J., and DONOVAN, J., concurred.

---

[4] The practical import of this decision may be whether the defendant will be entitled to a jury instruction on his theory of the case. In a sense, the defendant is correct that a decision on that matter is premature because it is unknown what evidence will be admitted at trial. If the defendant puts on evidence of the alleged victim's consent as his theory of the case, whether he will be entitled to a jury instruction on his theory of the case will be within the sound discretion of the trial court. See State v. Ramos, 149 N.H. 272, 274 (2003).